WOBURN DEGREASING CO. OF NEW JERSEY v. SPENCER KELLOGG & SONS, Inc.

Civil No. 452.

District Court, W. D. New York.

July 22, 1942.

See, also, 40 F.Supp. 357.

George F. Scull and Joseph V. Meigs, both of New York City, and John S. Powers, of Buffalo, N. Y., for plaintiff.

A. M. Houghton and Horace B. Cooke, both of Washington, D. C., and Edwin T. Bean, of Buffalo, N. Y., for defendant Spencer Kellogg.

George L. Grobe, U. S. Atty., of Buffalo, N. Y., and George A. McNulty, Chief Alien Property Unit War Division, Department of Justice, of Washington, D. C., for Alien Custodian.

KNIGHT, District Judge.

Plaintiff moves for leave to file an amended and supplemental complaint to include the Alien Property Custodian as a party plaintiff, with the recital of his vesting order relating to the patent in suit, and also to limit its charge of infringement to the field for substitutes for linseed oil and other types of drying oil.

The defendant opposes the plaintiff's aforesaid motion to dismiss the complaint and also file an amended answer. The defendant's motion to amend is unopposed.

I have carefully reviewed the papers submitted in these motions and the clear and extensive briefs of the respective counsel.

Many of the matters involved in these motions are within my knowledge from the consideration of an earlier motion in this suit.

I think the matters in controversy here can logically be decided in the order which follows:

Accepting the defendant's claim that the plaintiff's right to sue was not enlarged by the assignment of May 28, 1940, that prior to that date it had the right to sue only in the limited field of its license and then only by bringing in I. G. Farbenindustrie Aktiengesellschaft, a corporation of Germany (hereinafter called "I. G."), as an indispensable party plaintiff, the Alien Property Custodian, as successor in interest of I. G., is an indispensable party plaintiff.

The conclusion above made is based upon the assumption that the I. G. was the owner of the title to the property and had not parted with such ownership.

It is claimed by the defendant that the Standard Catalytic Company (formerly known as "S. I. G.", and hereinafter called "S. I. G.") is an indispensable party and is such by reason of the license issued by I. G. to it on November 9, 1929.

It is claimed that the field of the license so issued S. I. G. was in the field of the license issued to the plaintiff. The license issued to the plaintiff is described in the "field" defined as "the treatment of castor oil to produce oils of drying oil character, i. e., to the type suitable as substitutes for linseed oil and other types of drying oils."

The so-called Hutz & Joslin letter of June 19, 1940, which I conclude is a part of the assignment of May 28, 1940, expressly makes such assignment subject to the aforesaid license issued to S. I. G. It recites that such license to S. I. G. was "for the manufacture of products which are to be used in admixtures of products of mineral oil character."

The license itself to S. I. G. states that it is to cover the manufacture of such products. It seems to me that the license to S. I. G. Co. and to this plaintiff are for the manufacture, sale, etc., of two different processes, to wit: "one is for the process of the modification of castor oil to make it soluble or miscible with mineral oil and useable as a lubricant, and one to make a drying oil, such as might be used in the paint and varnish arts as a drier, as is linseed oil."

This is a conclusion which I arrived at and pointed out as quoted last above in my decision of August 26, 1941 (40 F.Supp. 357), in the consideration of this patent on the aforesaid prior motion. The first mentioned process was the one granted by the license issued to S. I. G.; the other one issued to this plaintiff. I think the plain language of the licenses make this distinction, and I think it is clear that the patentee so understood it. The claim now made by the plaintiff is definitely limited to the process of making a drying oil to be used, as is linseed oil, in the making of paints, varnishes and enamels.

It is the defendant's claim, in effect, that S. I. G. is an exclusive licensee in all fields under the patent suit based upon the agreement by I. G. with S. I. G. to assign to S. I. G. "all of its patent rights outside of Germany which relate wholly or principally to the hydrocarbon field" and also the right to license others "under its patent rights, which are useful in the hydrocarbon field but are also useful to a substantial degree in others * * * but only so far as they are useful in the 'hydrocarbon field.'"

The so-called four board agreement defines the "hydrocarbon field." It limits that field to certain listed substances and so limited does not cover the field defined in the license issued to the plaintiff.

It is also claimed that Standard Catalytic, as the successor in interest of S. I. G., is an exclusive licensee for a limited field, such field being limited as hereinbefore indicated.

It is obvious that unless the alleged infringement has occurred in the field defined in the license to S. I. G., S. I. G. is not an indispensable nor a necessary party. It is also claimed it should be made a party so that the question of the rights of S. I. G., as between it and the defendant, may be settled in this suit so that the defendant may not be subjected to a later suit over the same issue.

If there be some doubt in my conclusions as to the meaning and effect of the license of I. G. and S. I. G., I do not believe it is such a doubt as justifies bringing in Standard Catalytic as a party to this suit.

Concededly a "thinner" is used together with the drying oil in the making of paints and varnishes. Plaintiff uses "naptha" as a thinner. Defendant asserts that "naptha" is of a "mineral oil character" and that, therefore, plaintiff's license expressly excludes the right to manufacture its product in admixture with "naptha." On the other hand, the defendant claims the exclusion clause in its license relates only to the field of "lubricating oil" as distinct from the field of "drying oils."

I do not think that I am called upon at this time to make any conclusion in this respect; such conclusion, as I view it, would be a determination as to whether this defendant infringes or whether it does not. The court should have the benefit of testimony given upon trial of that issue in the regular way rather than by making a determination upon the affidavits and proofs submitted upon this motion.

The so-called Hutz letter purports to authorize the plaintiff to bring this suit. It is true, as pointed out by the defendant, that the complaint herein as originally filed pur-

ported to set out a claim to an assignment to the plaintiff to all interests in the patent suit and made no reference to limitations shown in the Hutz letter. It may reasonably be urged that such an admission was with knowledge, and it is quite probable that the defendant is put to unnecessary trouble and expense by reason of these admissions. However, I do not think the complaint can be dismissed on this account, but this circumstance is a factor which may be considered on the final event of a suit as bearing upon the question of costs.

My opinion is, therefore, that the motion of the plaintiff to file an amended and supplemental complaint to include the Alien Property Custodian as a party plaintiff and also limiting the charge of infringement to the field of substitutes for linseed oil and other types of drying oil should be granted.

The motion to dismiss is denied and the defendant is allowed to amend.