## B. B. CHEMICAL CO. *v.* ELLIS ET AL.

No. 75. Argued December 10, 1941.—Decided January 5, 1942.

*Mr. Harrison F. Lyman,* with whom *Messrs. C. E. Hammett, Jr.,* and *Arnold C. Rood* were on the brief, for petitioner.

*Mr. William Gates, Jr.,* with whom *Messrs. Robert Cushman* and *James R. Hodder* were on the brief, for respondents.

*Solicitor General Fahy; Assistant Attorney General Arnold,* and *Messrs. Richard H. Demuth* and *James C. Wilson* filed a brief on behalf of the United States, as *amicus curiae,* urging affirmance.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

This is a companion case to *Morton Salt Co. v. G. S. Suppiger Co., ante,* p. 488, and involves the question whether the owner of a method patent who authorizes manufacturers to use it only with materials furnished by him may enjoin infringement by one who supplies

the manufacturer with materials for use by the patented method and aids in such use.

Petitioner brought the present suit for an injunction and an accounting for infringement of the Ellis Patent, No. 1,830,428, of November 3, 1931, for a method of reinforcing insoles in shoe manufacture. Respondents denied infringement and set up as a further defense petitioner's misuse of the patent by permitting its use only with the unpatented materials sold by petitioner. The district court sustained this defense, 32 F. Supp. 690, and the Court of Appeals for the First Circuit affirmed. 117 F. 2d 829. We granted certiorari, 313 U. S. 558, because of the importance of the question presented and because we wished to consider this with the *Morton Salt Company* case.

Claim 4 of the patent is for a method "of reinforcing insoles which comprises applying, at room temperature, to a strip of reinforcing material provided with a dry coating of a cement having a substantial rubber content, a coating of adhesive containing a relatively large amount of rubber and of such a character that it will be effective even when freshly applied to cause quick adhesion of the reinforcing material and the material of the insole, and applying to each other, still at room temperature, a portion of the coated strip and the insole to be reinforced." Both courts below sustained the validity of claim 4 and held it was infringed by respondents' selling to purchasers of petitioner's materials like material for use with the patented process. But both held that petitioner was debarred from enjoining the infringement because of the manner of conducting its business, which is to supply shoe manufacturers, for use in reinforcing insoles, pre-coated fabric which it has slit into strips of suitable width for use by the patented method. If the manufacturer desires, he provides the fabric and petitioner pre-coats and slits it. Petitioner

supplies adhesive of high rubber content to be applied to the pre-coated fabric at the factory, just before the application of the reinforcing material to the insole. It also furnishes patented machines suitable for applying the adhesive to the strips, the machines remaining petitioner's property.

As compensation, petitioner makes a single charge to the shoe manufacturer at a rate per web yard of fabric used, and if the manufacturer does not furnish the fabric the price of that is added to the charge. Petitioner has not granted to shoe manufacturers, or asked them to take, written licenses. The courts below held that petitioner's sale to manufacturers of the unpatented materials for use by the patented method operated as a license to use the patent with that material alone and thus restrained competition with petitioner in the sale of the unpatented material, as in *Carbice Corp.* v. *American Patents Corp.,* 283 U. S. 27, and *Leitch Mfg. Co.* v. *Barber Co.,* 302 U. S. 458.

Petitioner insists that the respondents' acts of infringement, as found by the district court, were not limited to the sale of material for use by the patented method, as in the *Carbice* and *Leitch* cases, but amounted to active inducement of infringement by the shoe manufacturers and to coöperation with their infringing acts. Petitioner argues that, even though under the *Carbice* and *Leitch* cases it has "no right to be free from competition in the sale" of the materials, it has the right under the patent law to restrain infringement in any manner other than by the competitive sale of the unpatented materials.

We may assume, for purposes of decision, that respondents' infringement did extend beyond the mere sale of the materials to the manufacturers. But in view of petitioner's use of the patent as the means of establishing a limited monopoly in its unpatented materials, and for the reasons given in our opinion in the *Morton Salt Company* case,

we hold that the maintenance of this suit to restrain any form of infringement is contrary to public policy, and that the district court rightly dismissed it.

It is without significance that, as petitioner contends, it is not practicable to exploit the patent rights by granting licenses because of the preferences of manufacturers and of the methods by which petitioner has found it convenient to conduct its business. The patent monopoly is not enlarged by reason of the fact that it would be more convenient to the patentee to have it so, or because he cannot avail himself of its benefits within the limits of the grant.

Despite this contention, petitioner suggests that it is entitled to relief because it is now willing to give unconditional licenses to manufacturers on a royalty basis, which it offers to do. It will be appropriate to consider petitioner's right to relief when it is able to show that it has fully abandoned its present method of restraining competition in the sale of unpatented articles and that the consequences of that practice have been fully dissipated.

*Affirmed.*

MR. JUSTICE ROBERTS took no part in the decision of this case.