**WOBURN DECREASING CO. OF NEW JERSEY et al. v. SPENCER KELLOGG & SONS, Inc.**

**No. 452.**

District Court, W. D. New York.

Feb. 3, 1943.

Suit by Woburn Decreasing Company of New Jersey and another against Spencer Kellogg & Sons, Inc., for patent infringement. On application of the United States for permission to intervene under Rule 24(b) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

See, also, 46 F.Supp. 959.

Gifford, Scull & Burgess, Newton A. Burgess, and Joseph V. Meigs, all of New York City, and John S. Powers, of Buffalo, N. Y., for plaintiff Woburn Degreasing Co.

A. M. Houghton and Horace B. Cooke, both of Washington, D. C., and Bean, Brooks, Buckley & Bean, of Buffalo, N. Y., for defendant Spencer Kellogg & Sons, Inc.

Thurman Arnold, Asst. Atty. Gen., Herbert A. Berman, Edward H. Levi, Ernest S. Meyers, and Bartholomew A. Diggins, Sp. Assts. to the Atty. Gen., all of Washington, D. C., and George L. Grobé, U. S. Atty., of Buffalo, N. Y., for the United States.

KNIGHT, District Judge.

This is a patent infringement suit. The United States of America seeks to intervene, and the basis of the application is Rule 24(b) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

It is not claimed that the government makes the application as a matter of right, but urges that it should be allowed in the discretion of the court, since its claim and the main action have a question of law and fact in common.

The foregoing rule is to have a liberal construction. Brotherhood of Locomotive Engineers v. Chicago, M., Etc. R. Co., D.C., 34 F.Supp. 594; United States v. C. M. Lane Lifeboat Co., D.C., 25 F. Supp. 410. Intervention is sought on the ground that it is necessary to protect the public interest. In Securities and Exchange Comm. v. United States Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 1055, 84 L.Ed. 1293, the Securities & Exchange Commission sought the right to intervene in a proceeding for reorganization under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., instituted by the U. S. Realty & Improvement Company. It was there said, with reference to Rule 24: "This provision [2] plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." So here it must be said that it is not necessary that the government show that it has a "direct personal or pecuniary interest." Letters patent are "to be regarded * * *

as public franchises." Seymour v. Osborne, 78 U.S. 516, 533, 20 L.Ed. 33. The public interest is affected by any fraud in obtaining them or in acting under them.

Two decisions of the courts have been brought to this court's attention which are purported to contain facts somewhat comparable with those in the instant case. There are, however, clearly distinguishing features in each. In Pollen v. Ford Instrument Co., D.C., 26 F.Supp. 583, which was a suit for infringement of a patent, it does not appear whether the intervention of the government was by consent or over the opposition of a party. Also the proposed answer in that case set up a defense which was not plead by the other defendant. In General Electric Co. v. Hygrade Sylvania Corp., 45 F.Supp. 714, 719, the issue which the government sought to raise had not been raised. Intervention was denied, reserving to the United States the right to renew its motion for intervention "if the defendant fails to present the issues alleged in the government's proposed answer." Both the plaintiff and the United States claim to find support in the opinion in this case. The court did say this: "If the defendant decides to present evidence on these issues it will be unnecessary for the Government to intervene. A private litigant may raise the issue, as was done in the Morton Salt Co. case [314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363] and the B. B. Chemical Co. case, supra [314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367]." The court there decided that the government should not be permitted to intervene, if the issue proposed to be presented by it were raised by the defendant. The opinion of the court as to that particular question is clear, irrespective of other grounds which it states would support a denial to intervene. There are facts and circumstances in the case which weaken its authority on the question here.

While, as we have stated, Securities & Exchange Comm. v. United States Realty & Improvement Co., supra, is authority for the proposition that intervention is not dependent upon "a direct personal or pecuniary interest", it should be noted that a much different situation was presented there. Proceedings were brought under Chapter XI of the Bankruptcy Act. Under Chapter X of such Act, 11 U.S.C.A. § 501 et seq., certain plans of reorganization must be referred to the Securities & Exchange Commission, and the Commission,

with the approval of the court, is authorized to participate in such proceedings. Under Chapter XI there are no such provisions with reference to the Securities & Exchange Commission, and because of these facts it was found that the Exchange had the right to intervene and oppose the proceedings under Section XI.

The claims relate to a process for making dehydrated castor oil. The United States, as does Kellogg, claims that Woburn and its licensor and assignor, I. G. Farbenindustrie Aktiengesellschaft (hereinafter referred to as I. G. Farben), a German corporation, have used the patent to control the use and sale of the unpatented article of commerce manufactured by the process purported to be covered by the claims in the patent. The government claims that under the provisions of the license agreement between Woburn and I. G. Farben, dated July 1, 1937, and the purported assignment of the Ufer Patent, dated May 28, 1940, various restrictions are imposed and royalties made payable on the unpatented product. The law is well settled that the claims of a process patent do not go to the extent of preventing control of the sale of the product of the process. As was said in Leitch Mfg. Co. v. Barber Co. 302 U.S. 458, 58 S.Ct. 288, 290, 82 L.Ed. 371: "Every use of a patent as a means of obtaining a limited monopoly of unpatented material is prohibited." Vide also Ethyl Gasoline Corp. v. United States, 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852; B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367. If the license and assignment aforesaid have the effect claimed by the United States, both the license and the agreement would be illegal, and it follows that a suit for infringement of the patent could not be maintained. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363; B. B. Chemical Co. v. Ellis, supra. But, as pointed out, the issue in respect to these contentions is also raised by Kellogg.

The proposed defense of conspiracy is based upon the claim that the patent in suit has been used to support an unlawful combination and conspiracy between I. G. Farben and Standard Oil; that Woburn stands in the same relative position as Farben with respect to such conspiracy between it and the Standard Oil because it has accepted benefits and assumed restrictions and prohibitions incidental to that combination and conspiracy. The Ufer patent in suit was originally issued to I. G. Farben as assignee of the inventor Ufer. Farben purported to grant to Standard Oil rights under the patent to produce dehydrated castor oil without drying properties. Under the Ufer process dehydrated castor oil is made miscible with oils of mineral oil character, and as so combined it is used as a lubricant. In the process, dehydration of the castor oil beyond the point where it is so miscible with oils of mineral character produces a drying oil, such as is used in paints and substitutes for certain other oils. The drying oil process was licensed and assigned to Woburn, and the lubricating oil process to Standard. Woburn and Standard thus are purported to have acquired separate rights under the same patent. The government brought suit against Standard claiming that it had engaged in an unlawful conspiracy in restraint of trade. This suit was settled by a consent decree. There has been submitted to this court as a part of the motion papers of the United States the Complaint, the extensive exhibits used in connection therewith, and judgment entered therein.

The part of the Rule under consideration here, (b), reads: "Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

Four separate conditions must be met by the government. The application must be timely made. Whether so or not is to be determined by the circumstances shown relative to delay. Simms v. Andrews, 10 Cir., 118 F.2d 803. This motion was filed December 24, 1942. The suit has been pending nearly three years and by agreement has been set down for trial for March 19, 1943. Matters in connection with this suit have been heretofore considered by this court three times. 37 F. Supp. 311; 40 F.Supp. 357; 46 F.Supp. 959. There has been a trial of one of the issues. In the instant case a representative of the government, the Alien Property Custodian, was permitted to intervene as a party plaintiff in August, 1942. The consent decree between the United States and

Standard was entered into in or about March, 1942. When the government brought suit against Standard, the Attorney General, it is believed, must have known that the instant suit was pending. He certainly then knew of the terms of the license and agreement between Farben and Woburn which he now asserts were illegal. Still nothing was done by the government. In recent months settlement negotiations between Woburn and Kellogg have been pending. The United States asserts that it delayed making this motion pending a possible settlement. This, of course, does not explain the delay long preceding the negotiations for settlement. The court in exercise of its discretion might well be justified in denying intervention on the ground that the motion was not "timely" made, but it does not feel that it should rest its decision on this motion upon this question alone.

It is conceded that there is no statute which confers the unconditional right to intervention herein. There are numerous statutes conferring such right in other types of cases.

The proposed "claim or defense" of the government founded on the "public interest" has a question of law or fact in common with the main proceeding, as required by Rule 24(b) (2).

Intervention must not unduly delay or prejudice adjudication in the suit. It seems quite certain that the trial of the issue of conspiracy will greatly delay the final determination herein. This is made clear to the court from the pleadings and the exhibits in the suit against Standard touching the same charge, and further by the fact that the conspiracy charge would inject a new issue into the case. The conspiracy issue would probably involve much additional proof. It seems that the circumstances shown here are such that the intervention of the United States now would unduly delay and prejudice the adjudication of the rights of the original parties.

In view of negotiations heretofore had, it seems to the court that settlement can now be made between the original parties to this suit. Terms of a settlement were heretofore agreed on and would have been perfected had the waiver of the Alien Property Custodian to certain royalties

been given. There is a sharp dispute as to the attitude of the Custodian with regard to this waiver. Whatever the facts are as to what has gone before, the Custodian now refuses to execute the waiver. It seems to me that agreement can still be made before the trial date.

No reason appears why the defendant Kellogg cannot fully and fairly present the issue as to any violation of the anti trust law. Kellogg's interest requires such prosecution as well as the other issues raised. Certainly there is nothing to show that Kellogg will "lie down" on its job. No reason is shown why the government cannot furnish Kellogg with the results of its investigation touching this issue.

Then, again, the government is not bound by the decision in this case. It is free to proceed at any time upon the claims it presents here.

Instances have been rare where application to intervene by the government in patent infringement cases has been made, and this is properly considered in judging the intent of the rule in the exercise of discretion. It is true, as is held here, that the government has an interest which brings it within this right to intervene if its application is timely, and it will not delay or prejudice the within parties, but in dealing with this rule we have to consider, here in connection with the exercise of the court's discretion, whether it was intended to permit such intervention as sought. The paucity of cases indicates that Rule 24(b) (2) of the Federal Rules of Civil Procedure and Rule 37 which previously governed the practice were not intended to apply to cases like the present. Further, as bearing on this, it is noted that a bill is now pending in Congress purporting to give the Attorney General the right to intervene in patent infringement suits.

I find that the government's application was not timely made and also that intervention herein would unduly delay the trial herein to the prejudice of the parties.

The motion to intervene is denied, subject, however, to the right to renew in case the defendant Kellogg does not at the trial fully and fairly present the issue of the violation of the anti-trust law, and also, such right, in case there be any unnecessary delay in the trial.