**PARK–IN THEATRES, Inc., v. LOEW'S DRIVE–IN THEATRES, Inc.**

Civil Action No. 114.

District Court, D. Rhode Island.

March 11, 1947.

Thomas J. Flynn, of Providence, R. I., Leonard L. Kalish, of Philadelphia, Pa., and Samuel E. Darby, Jr., of New York City, for plaintiff.

Herbert B. Barlow and John L. Curran, both of Providence, R. I., for defendant.

HARTIGAN, District Judge.

This is a civil action to recover damages for royalties under a license agreement and for infringement of the patent after termination of the license agreement.

The plaintiff is a corporation organized and existing under and by virtue of the laws of the State of New Jersey and is an inhabitant and citizen of New Jersey.

The defendant is a corporation organized and existing under and by virtue of the laws of Rhode Island having a regular and established place of business in the City of Providence in said State where the acts of

infringement complained of have been committed.

■ Jurisdiction of this court arises because the suit is one under the patent laws of the United States and also because of diversity of citizenship of the parties, and the amount of the controversy, exclusive of costs and interest, is in excess of $3,000.

The complaint alleges that on May 16, 1933, Letters Patent No. 1,909,537 of the United States were issued to Richard M. Hollingshead, Jr., for an invention in Drive-in Theaters; that by assignment executed June 1, 1933 and recorded in the Transfers of Patents of the United States Patent Office August 11, 1933, in Liber F 157, page 135, the entire right, title and interest in and to said Letters Patent No. 1,909,537 were assigned by Hollingshead to the plaintiff; that the outdoor drive-in theater invented by Hollingshead and forming the subject matter of patent No. 1,909,537 was entirely unknown and unanticipated in the United States or elsewhere prior to the time when Hollingshead invented such outdoor drive-in theater and that such invention constitutes an original inventive contribution of great value and benefit to the public at large; that the plaintiff has invested large sums of money in the commercial development and building and construction of outdoor drive-in theaters embodying the Hollingshead invention; that the validity of plaintiff's patent No. 1,909,537 has been acquiesced in both by the public, as well as by motion picture exhibitors and theater operators and owners and a large number of financially responsible individuals and corporations who have long and regularly been engaged, prior to Hollingshead's invention, in the exhibition of motion pictures and in the ownership, operation and management of conventional indoor motion picture theaters, have taken royalty-bearing licenses from the plaintiff under patent No. 1,909,537 and that plaintiff's licensees have invested large sums of money in building and constructing outdoor drive-in theaters throughout the United States under the plaintiff's patent in suit and under licenses; that individuals and corporations have taken royalty-bearing licenses from the plaintiff under patent No. 1,909,537 for the building, construction and operation of upwards of forty additional outdoor drive-in theaters according to and embodying the invention of the Hollingshead patent in suit.

The complaint further avers that on June 1, 1937, the plaintiff and defendant entered into an agreement (plaintiff's Exhibit 3) by which the defendant was given certain license rights under the patent in suit to operate an outdoor drive-in theater in Providence and upon the terms and conditions that included the obligation to render certain weekly reports of receipts and to make certain weekly payments of royalties based upon such receipts; that the defendant reported to the plaintiff upon the use or operation of the Providence outdoor drive-in theater from the beginning of the operation of said theater on July 21, 1937 until November 13, 1937, and made royalty payments to the plaintiff for said period, and that the defendant's reports for the operation of the licensed outdoor drive-in theater during said period show that the defendant collected or received $29,065.75 for admission to said outdoor drive-in theater; that the defendant had a very substantial net profit out of said total receipts over and above all cost of operation including interest on investment, maintenance and royalty payments; that the defendant ceased making reports and ceased making payment of royalties to the plaintiff after November 13, 1937, and the defendant's default under a breach of agreement has continued; that the defendant has continued to use and operate the outdoor drive-in theater in Providence from November 13, 1937, to date and that the defendant has received additional large sums of money from and as a result of the use and operation of said outdoor drive-in theater and has further substantially profited from such use and operation; that by reason of the defendant's failure to make reports and payments of royalties after November 13, 1937, the plaintiff cancelled and terminated said agreement of June 1, 1937, pursuant to paragraph 12 of said agreement; that by reason of the termination of said agreement the defendant was without a license under the patent in suit for some time after June 1, 1938, and prior to the institution of this suit and that during such time the defendant did, without license, operate said outdoor drive-

in theater which unlicensed operation constitutes an infringement on the plaintiff's patent in suit; that by the agreement of June 1, 1937, and particularly by virtue of paragraph 22 thereof, the defendant has acknowledged the validity and apparent scope of the patent in suit and is estopped from denying the validity of the patent.

The plaintiff has stated that it is of far greater importance to it to have an adjudication on the validity of the patent than to rely on its contention that the defendant is estopped from denying its validity. I shall give, therefore, no further consideration to the principle of estoppel.

The defendant has filed an answer in which it admits that Letters Patent No. 1,909,537 were issued to Hollingshead but avers said letters patent are invalid.

The defendant further admits the agreement between the plaintiff and the defendant dated June 1, 1937, but avers that said agreement is of no force and effect and does not constitute a valid and binding agreement in that it purports, unlawfully, to restrain the defendant from engaging in the business which it was organized to carry on and from making use of patent rights, and in that its object and effect is to restrain trade and commerce among the several states in violation of the anti-trust laws of the United States and of other provisions of law.

The defendant admits it reported to the plaintiff upon the use and operation of the outdoor drive-in theater from the beginning of the operation of said theater on July 21, 1937, until November 13, 1937, and made royalty payments to the plaintiff for said period and that it ceased to make payments to the plaintiff after November 13, 1937, and that before the termination of the said license agreement it did for a short period in the late spring of 1938 remain in default.

The defendant also admits that it was without a license under the patent in suit for some time after June 1, 1938 and prior to the institution of this suit and that during such time it did without license operate said outdoor drive-in theater in Providence and that said unlicensed operation constitutes an infringement of the plaintiff's patent.

The defendant denies it has acknowledged the validity and apparent scope of the patent and that it is estopped from denying its validity and avers said license agreement is void.

The defendant further avers that the alleged invention is not the statutory subject of patentable invention and is not a new and useful manufacture within the statutes and does not exhibit or embody any substantial variation or change from what belonged to the state of the art as it existed at the time of the alleged invention or discovery thereof by Hollingshead and that it did not then involve the exercise of inventive faculty or constitute the subject matter of invention proper to be secured by the grant of letters patent within the meaning and intent of the statutes relating thereto.

I find no merit in this defense in view of the decision in Park-In-Theatres v. Rogers, 9 Cir., 130 F.2d 745.

The defendant further avers that it did notify the plaintiff of competitive infringing drive-in theaters within the exclusive territory referred to in paragraph No. 4 on map attached to said license agreement and that this notice was given in accordance with paragraph No. 23 of said license agreement before any termination of the license agreement was made or incurred, yet the plaintiff, though required to do so, declined and refused to institute suit for patent infringement to enjoin such competitive infringing drive-in theater within the aforesaid exclusive territory on the ground that it believed the Hollingshead patent No. 1,909,537 to be of doubtful validity.

I find that the defendant did not notify the plaintiff "in writing" of any competitive infringing drive-in theater within the aforesaid territory as required by the provisions of paragraph No. 23 of the license agreement and there is no substantial or credible evidence to support this defense. It merits no further consideration by the court.

The defendant also avers that a further ground of invalidity of said Hollingshead patent is that the patent does not point out in full, clear, concise and exact terms so as to enable any person skilled in the art or

science to which it appertains, or with which it is most nearly connected, to make, construct and use the same as required by 35 U.S.C.A. § 33 and by the rules of the patent office.

The defendant admits that a profile drawing and a plan drawing, like that of plaintiff's Exhibits 6 and 7, respectively, were supplied by the plaintiff to the defendant on or about May 21, 1937; that on or about April 27, 1937, the defendant requested the plaintiff to have drawings made for use by the builders or constructors or contractors who were to build defendant's drive-in theater in Providence in 1937 and that said Exhibits 6 and 7 were prepared responsive to defendant's request; that the defendant's drive-in theater at Providence was in part constructed in accordance with said drawings but shows that there were departures therefrom; that the drive-in theater was constructed substantially in accordance with the drawings of plaintiff's Exhibits 6 and 7 and that it had been operated by the defendant during every drive-in theater season for the years 1937 to 1944, inclusive, except during the season of 1943, when it closed down during part of the season because of restrictions imposed by the Office of Price Administration in respect to the use of gasoline for pleasure driving and that its operation did not exceed twenty days in 1943.

The plaintiff relies on claims 2, 4, 5, 6, 8, 10, 15, 16 and 19.

Claim 2 is as follows:

"An outdoor theater comprising a stage, alternate rows of curvilinear automobile drive-ways and curvilinear and vertically inclined automobile stall-ways arranged in front of the stage, said stall-ways being adapted to receive automobiles disposed adjacent to each other and facing the stage; said automobile stall-ways being at a verticle angle with respect to the stage such as will produce a clear angle of vision from the seat of the automobile, through the windshield thereof to the stage, free of obstruction from the automobile ahead of it."

Claims 4, 5, 6, 8 and 10 also state specifically "a clear angle of vision (22 of drawing) from the seat of the automobile, through the windshield."

Claim 15 provides said automobile stallways are vertically inclined with respect to the horizontal, and successive stall-ways, removed from the stage, being successively higher, and successive stall-ways, removed from the stage, being at successively lesser angles with respect to the horizontal.

Claim 16 is as follows:

"An outdoor theater comprising exhibiting means and space for spectators in front thereof, inclined means for supporting automobiles in such space in rows further and further from said exhibiting means, the supporting means in the rows further and further away from the exhibiting means being higher and less inclined successively to an extent as will produce a clear line of vision from the seat of an automobile in a row, through a windshield thereof to the exhibiting means, free of obstruction from the automobile ahead of it, and an automobile driveway leading to and from said supporting means of a row."

Claim 19 is substantially the same except that it also states "an automobile driveway at the front and an automobile drive-way at the back of the automobile supporting means."

In Park-In-Theatres v. Rogers, 9 Cir., 130 F.2d 745, 747, the court said:

"In the case at bar the patent (No. 1,-909,537) provides for a system of arranging automobiles facing the stage or screen so that the various automobiles will not enter the line of sight of those in other automobiles and that the automobiles going and coming will also be below the line of sight of those which remain.

"The main problem involved is in arranging the position of the automobile so that all the persons therein may be able to look through the windshield and see the entire stage or screen. This is accomplished by tilting the automobile. The patent claims do not specify the means for tilting the automobile but the drawings indicate that one method is by driving the automobile on planes of varying inclination.

"The material utilized in constructing the drive-in theater is not important in determining whether or not the finished project is manufactured within the meaning of the patent law.

"We conclude that the outdoor theater comes under a patentable classification, as a manufacture or machine.

"The issuance of the patent is presumptive evidence of invention and patentability. The presumption is so strong that in the event of a reasonable doubt as to patentability or invention that doubt must be resolved in the favor of the validity of the patent. Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983. See also Frank v. Western Electric Co., 2 Cir., 24 F.2d 642, 645. The lower court confines its conclusions to the proposition that the theatre was not a patentable subject and, consequently, did not consider the questions of invention, utility, etc. Upon the latter issues the patentee has the right to fortify the presumption of validity of the patent by proof of matters tending to show that the conception of the patentee involved invention and utility."

That suit involved claims 1, 2, 5 and 9 to 15, inclusive.

35 U.S.C.A. § 33 provides:

"Before any inventor or discoverer shall receive a patent for his invention or discovery he shall make application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. * * *"

The defendant has not pleaded that Hollingshead did not explain the principle of his drive-in theater and the best mode in which he has contemplated applying that principle so as to distinguish it from other inventions.

In view of the decision in the case of Park-In-Theatres, supra, that even though the patent claims do not specify the means for tilting the automobile but the drawings indicate that one method is by driving the automobile on planes of varying inclination, it is my opinion that Hollingshead complied with said § 33.

In Petersen v. Coast Cigarette Vendors, 9 Cir., 131 F.2d 389, 390, 391, the court said:

"The claims in suit differ somewhat in detail, but in substance all are for 'a coin controlled machine having a vending mechanism, two coin controlled mechanisms for the reception of two different coins, each coin controlled mechanism being normally latched to be released by the insertion of coins and means controlled by a purchaser (or, carried by part of the vending mechanism) to unlatch one of the coin controlled mechanisms so that the insertion of a coin in the other coin controlled mechanism will release the vending mechanism.' None of the claims in suit contains any more specific description of the 'means' for unlatching the mechanism as to which no coin is required.

"Our first consideration, then, must be given to the sufficiency of the claims. The requirements of a patent application are established by 35 U.S.C.A. § 33, which provides that the application shall contain a full description of the invention and 'particularly point out and distinctly claim the part, improvement, or combination' which is claimed as the invention. This only requires that the claims point out the invention, not that they redescribe it. This court has accordingly held, in the case of Shull Perforating Co. v. Cavins, 9 Cir., 94 F.2d 357, 364, that 'where the means referred to in claims are clearly shown in the description of the patent, this description is sufficient to cover the means thus disclosed and its mechanical equivalents.' In conformity with this view, we hold that the present patent is sufficient in form to cover the latch-releasing means described in the specifications, and mechanical equivalents thereof."

In lines 30 to 44, inclusive, p. 2 of the patent in suit, it is pointed out:

"As will be observed from the drawings, the stall-ways 14 are each inclined upwardly at a slight angle in a forward direction, so that the automobile will be tilted upwardly to an extent sufficient to bring *the angle of vision* 22 between the car and the screen 12, clear of the top of the car ahead of it; each stall-way, however, being slightly below the stall-way behind it, so that the angle of vision from each car to the screen will clear not only the car directly ahead of it, but all cars ahead of it. By this means also, each automobile may be backed into its drive-way 15 without starting the engine, and the same may coast backward." (Italics ours.)

In Tschappat v. Hinderliter Tool Co., 10 Cir., 98 F.2d 994, 998, the court said:

"The specification and claims of a patent constitute a contract between the United States and the patentee, and they should be read and construed together, not for the purpose of limiting, contracting, or expanding the claims, but for the purpose of ascertaining from the entire agreement the actual intention of the parties."

There is credible testimony of witnesses who have been engaged as motion picture exhibitors, theater operators and owners for a great many years that the drive-in theater is "ingenious," "practical," "a good business investment," "a completely new idea of giving entertainment to people who could not ordinarily go to the theatre," and "is a beneficial contribution to the art of exhibition of motion pictures."

The defendant's advertisements of its Providence Drive-in Theater in local newspapers in the summer of 1937 point out the novelty, utility and ingeniousness of Hollingshead's drive-in theater idea.

One advertisement of the defendant states: "E. M. Loew's Drive-in Theatre is the outstanding innovation in the amusement world." Other advertisements describe the outdoor theater as "new," "unique," "an innovation in the amusement field," "genuine novelty" and "immediate and enthusiastic approval from the public." (Exhibits 16, 17, 19 and 20.)

I find that none of the prior patents, publications nor prior use relied upon by the defendant clearly and definitely discloses a drive-in theater prior to the time that Hollingshead filed his application August 6, 1932.

The defendant contends that an architect or engineer could do what Hollingshead did. There is no evidence, however, that any architect or engineer over designed such a drive-in theater before Hollingshead or ever thought of the drive-in theater of the patent in suit. This indicates that Hollingshead exercised inventive genius.

The defendant also contends that Hollingshead's patent involves merely a problem of sight lines that has been solved in the construction of the conventional theater. No one before Hollingshead solved the "clear angle of vision" problem as described in the patent in suit.

The evidence discloses a novel and useful outdoor drive-in theater where persons may view a stage or motion picture screen with "a clear angle of vision" from the seats of an automobile, through the windshield, free of obstruction from automobiles ahead of it. The angle of vision is an included angle, Figure 4 of the drawing, which is the included angle coming from the eye of the occupant of the automobile through the vertical limitations of the windshield to the screen.

The evidence further discloses that Hollingshead's drive-in theater has been put into wide commercial use for several years and that approximately fifty licenses have been issued to existing theaters and theaters to be built.

The defendant has pleaded that the license agreement is of no force and effect and does not constitute a valid and binding agreement because it purports unlawfully to restrain the defendant from engaging in the business which it was organized to carry on and from making use of the patent rights, and in that its object and effect was to restrain trade and commerce among the several states in violation of the anti-trust laws of the United States but it has pleaded no particular paragraphs of the license agreement that violate the anti-trust laws.

The defendant, in its closing argument at the trial, contended that para-

graphs 2, 4, 5, 6, 7, 7a, 7b, and 9 of the license agreement are in violation of the anti-trust laws. However, in its brief it mentions only paragraph 4 and the second sentence in paragraph 6, which leads me to conclude that it waives its contention in regard to the other paragraphs.

Paragraphs 4 and 6 of the license agreement are as follows:

"4. Licensee covenants and agrees that it will not either directly or indirectly promote or aid the making, construction, use or operation of any drive-in theatre not licensed by Licensor."

"6. The outdoor drive-in theatre made or constructed or installed by Licensee shall be made or constructed or installed, in good workmanlike manner, and shall include equipment for the exhibition of sound motion pictures with satisfactory visual and auditory results; Licensee shall submit to Licensor at least fifteen (15) days prior to commencement of construction of such outdoor drive-in theatre, plans and specifications thereof, and of the picture and sound equipment to be installed therein, including all things essential to such equipment, and within ten (10) days after such submission Licensor shall in writing either approve the same or point out changes that will be satisfactory to it.

"Licensee covenants and agrees that it will not without the written consent of the Licensor first obtained, either directly or indirectly take or operate under or exercise any license under any patent or application for patent not owned or controlled by Licensor."

Section 1 of the Sherman Act, 15 U.S.C.A. § 1 provides:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal: * * *"

Section 3 of the Clayton Act, 15 U.S.C.A. § 14, provides:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

There is no evidence here that the plaintiff manufactures or sells any drive-in theaters or that it manufactures or sells anything in interstate commerce.

In Hopkins v. United States, 171 U.S. 578, 597, 19 S.Ct. 40, 47, 43 L.Ed. 290, the court said:

"Definitions as to what constitutes interstate commerce are not easily given so that they shall clearly define the full meaning of the term. We know from the cases decided in this court that it is a term of very large significance. It comprehends, as it is said, intercourse for the purposes of trade in any and all its forms, including transportation, purchase, sale, and exchange of commodities between the citizens of different states, and the power to regulate it embraces all the instruments by which such commerce may be conducted. * * *"

By the terms of paragraph 1 of the license agreement the plaintiff grants to the defendant an exclusive territorial license under the letters patent for the State of Rhode Island and part of Massachusetts "to make or construct and to use or operate (only within said territory but not elsewhere) but not to sell, nor construct or make for sale, either within said territory or elsewhere, one outdoor drive-in theatre for motion pictures or other events or other forms of entertainment, embodying or containing the subject matter of the aforesaid Letters Patent, or any other Letters Patent on improvements and additions to such drive-in theatre which may be owned by licensor at any time."

35 U.S.C.A. § 47 provides:

"Every application for patent or patent or any interest therein shall be assignable in law by an instrument in writing, and the applicant or patentee or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent or patent to the whole or any specified part of the United States. * * *"

In Heaton-Peninsular Button-Fastener Co. v. Eureka Specialty Co., 77 F. 288, 290, 25 C.C.A. 267, 270, 35 L.R.A. 728, the court said:

"A license operates only as a waiver of the monopoly as to the licensee, 'and estops the licensor from exercising its prohibitory powers in derogation of the privileges conferred by him upon the licensee.' Rob.Pat. §§ 806–808. It has been said that the sole matter conveyed in a license is the right not to be sued."

Paragraph 5 of the license agreement gives the defendant the right to construct and erect within the territory for which it is licensed as many outdoor drive-in theaters as it wishes, provided it enters into a similar license agreement with the plaintiff.

There is no evidence in this case that warrants that I find the license agreement, or more specifically paragraphs 4 and 6, are per se illegal and violate the Sherman and Clayton Acts. Neither does the evidence convince me that the plaintiff has used the patent license "coercively to exact a condition contrary to public policy." See Transparent-Wrap Mach. Corp. v. Stokes & Smith Co., 67 S.Ct. 610, 615.

In Hartford-Empire Co. v. United States, 323 U.S. 386, 415, 416, 65 S.Ct. 373, 388, 89 L.Ed. 322, the court said:

"The Government urges that such forfeiture is justified by our recent decisions in Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 788, 62 S.Ct. 402, 86 L.Ed. 363, and B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367. But those cases merely apply the doctrine that, so long as the patent owner is using his patent in violation of the anti-trust laws, he cannot restrain infringement of it by others. We were not there concerned with the problem whether, when a violation of the antitrust laws was to be restrained and discontinued, the court could, as part of the relief, forfeit the patents of those who had been guilty of the violation. Lower federal courts have rightly refused to extend the doctrine of those cases to antitrust decrees by inserting forfeiture provisions.

"Legislative history is also enlightening upon this point. Repeatedly since 1908 legislation has been proposed in Congress to give the courts power to cancel a patent which has been used as an instrument to violate antitrust laws. Congress has not adopted such legislation. The Temporary National Economic Committee recommended imposition of such a penalty for violation of antitrust laws. But its recommendation was not adopted by Congress.

"The Government suggests that certain earlier decisions under the Sherman Act, by analogy, support these portions of the decree. The cases cited, however, do not sustain the suggestion. In all of them the court refrained from ordering compulsory dealing with the assets of the defendant without compensation and, in most of them, the decrees merely called for rearrangement of ownership, not for its destruction."

The license agreement in the instant case came to an end before the patent infringement complained of began.

I find that the claims of the patent in suit upon which the plaintiff relies are valid.

I find that the defendant is liable for royalties under the license agreement prior to its termination.

I find that the defendant is liable for infringing of the patent after termination of the license agreement.

Paragraph 17 of the pre-trial order provides:

"All evidence relating to plaintiff's claimed damages and royalties claimed by the plaintiff shall be deferred and held in abeyance until after the Court's determination of the question of liability, and, if the Court determines that there is liability, then the Court will, without reference either to a master or to a jury, hear the evidence as to the amount of recovery, and will render a separate decision thereon."

The parties may proceed in accordance with the pre-trial order.