### GRAY TOOL CO. v. HUMBLE OIL & REFINING CO.
#### Civ. No. 2747.

United States District Court
S. D. Texas, Houston Division.

April 19, 1949.

Rowland & Bouldin (Jack W. Rowland and Homer T. Bouldin), of Houston, Texas, and Cushman, Darby & Cushman (William M. Cushman and John W. Malley), of Washington, D. C., for plaintiff.

Vinson, Wilkins, Weems & Francis (J. V. Martin and Jack D. Head), Nelson Jones, and Earl Babcock, all of Houston, Texas, for defendant.

KENNERLY, Chief Judge.

This is a suit by Gray Tool Company, plaintiff, against Humble Oil & Refining Company, defendant, charging infringement of Patents Nos. 2,082,413, 2,117,444, 2,150-887, and 2,241,333. Defendant has filed its Motion for Summary Judgment, basing it wholly and solely upon the Pleadings, Depositions and Affidavits, etc. filed by plaintiff herein.

In presenting such Motion, defendant stands upon Carbice Corp. v. American Patents Develop. Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819; Leitch Mfg. Co. v. Barber Co., 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371; Morton Salt Co. v. G. S.

Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363; Mercoid Corp. v. Mid-Continent Investment Co. et al., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Mercoid Corp. v. Minneapolis-Honeywell Regulator Co., 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396; B. B. Chemical Co. v. Elmer A. Ellis et al., 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367; Id., 1 Cir., 117 F.2d 829; Paul E. Hawkinson Co. v. Dennis, 5 Cir., 166 F.2d 61; American Lecithin Co. v. Warfield Co., 7 Cir., 105 F.2d 207; Lincoln Electric Co. v. Linde Air Products Co., 6 Cir., 171 F.2d 223; Philad Co. v. Lechler Laboratories, Inc., 2 Cir., 107 F.2d 747; and contends that plaintiff is using and/or attempting to use the patents in suit to establish a monopoly on the sale of articles or equipment not covered by such patents, and, therefore, plaintiff's suit should be dismissed.

At the oral hearing of defendant's Motion, defendant filed a statement of the material facts which it says are established by the record and upon which its Motion for Summary Judgment is based.[1] Later plain-

1. Such statement is as follows:—

"Defendant submits that the following material facts are established by those parts of the record referred to, and that these facts, standing alone reveal, that Plaintiff is attempting to use the patents in suit to establish a monopoly on equipment not covered by the patents in suit, and that under the authorities the Complaint should be dismissed:

"1. Producers of oil such as Defendant are supplied with oil well completion equipment by a number of competing manufacturers, and Plaintiff is one of these manufacturers.

"This fact is established by paragraph 7 of the Complaint which includes the following statement: 'That in this industry producers of oil such as Defendant are supplied with oil well completion equipment by a number of relatively small competing manufacturers; that Plaintiff is one of such manufacturers.'

"2. Manufacturers in competition with Plaintiff are selling equipment to Defendant, and other producers of oil, for use in the combinations and methods patented by the second, third and fourth patents in suit.

"This fact is established by the testimony of Mr. Mueller appearing in his deposition pages 146–148: (Mr. Mueller is President of the Plaintiff, and patentee of three of the patents in suit).

"'Q. Mr. Mueller, with reference to this ASA Series System that you have been talking about and the combinations of the patents, your company, the Gray Tool Company, manufactures some of the elements, isn't that true, and other elements are manufactured by other companies? A. Yes, sir.'

"Mr. Mueller also testified:

"'Q. Your company is engaged in selling the elements that you manufacture not only to the Humble, the defendant in this case, but the various other major oil companies, isn't that true? A. Yes.

"'Q. And your competitors are likewise engaged? A. Yes, sir.'

"3. Oil producers who purchase equipment from Plaintiff for use in the combinations and methods covered by the second, third and fourth patents in suit have an implied license as a matter of law to use the same in the said patented combinations and methods.

"4. Oil producers who purchase equipment from Plaintiff's competitors for use in the combinations and methods covered by the second, third and fourth patents in suit do not have any implied license as a matter of law to use the same in the combinations and methods patented by Plaintiff's second, third, and fourth patents in suit.

"5. Plaintiff has not granted licenses to all who would practice the alleged methods and use the alleged combinations covered by the patents in suit regardless of whether equipment is purchased from Plaintiff or its competitors.

"Plaintiff has not seen fit to undertake any comprehensive licensing program to exploit the alleged methods and combinations covered by the patents in suit by requiring all who would use the same to pay Plaintiff a royalty or other consideration for the use thereof regardless of

whether the equipment used in the alleged combinations and in practicing the alleged methods is purchased from Plaintiff or its competitors.

"The only existing licenses shown by the record are the implied licenses to those who purchase the equipment from Plaintiff.

"Paragraph 2 of Defendant's Request for Admissions filed November 1, 1948 is as follows, and this statement was admitted in Mr. Mueller's Affidavit in Response to Defendant's Request for Admissions paragraph 2, page 6 filed November 24, 1948: 'Plaintiff has not granted licenses to all who would practice the alleged methods and use the alleged combinations covered by the patents in suit regardless of whether equipment is purchased from Plaintiff or its competitors.'

"The admitted paragraph just quoted is a verbatum copy of the first sentence of this point No. 5.

"With respect to the second sentence of point No. 5, that is Plaintiff's failure to even undertake a comprehensive licensing program, Defendant requested Plaintiff to admit the following paragraph 3 of its Request for Admissions filed November 1, 1948: 'Plaintiff has not sought to exploit the alleged methods and combinations covered by the patents in suit by requiring all who would use the same to pay Plaintiff a royalty or other consideration for the use thereof regardless of whether the equipment used in the alleged combinations and in practicing the alleged methods is purchased from Plaintiff or its competitors.'

"The Mueller affidavit, filed November 24, in response to this Request states paragraph 3, page 6, that Plaintiff could not truthfully admit or deny the matters set forth in this statement, but on page 8 Mr. Mueller's affidavit includes the following admission: 'Due to the nature of the inventions and the dangers involved in their use, and because of plaintiff's limited personnel and resources, as outlined in paragraph 1(f) above, plaintiff has not found it to be practicable to assume the responsibility of exploiting the inventions by any comprehensive licensing program of an industry-wide nature and beyond the control of its technical personnel for royalty profits as suggested in this statement of the request for admissions.'

"And on page 9 of the same Affidavit Mr. Mueller makes the following admission: 'Due to the peculiar nature of the inventions, the dangers to life and property present in the operations with which they are used, and the limited personnel and resources at plaintiff's command, plaintiff has not seen fit to undertake any comprehensive licensing program as suggested in this paragraph of the request for admissions, and has confined its use of its patents in suit to the single undertaking of preventing defendant's appropriation of its inventions and technical knowledge as charged in the Complaint.'

"6. Plaintiff is complaining in this action that Defendant is purchasing equipment from Plantiff's competitors and using the same in the combinations and methods patented by the second, third and fourth patents in suit.

"It will be apparent from the plaintiff's Bill of Particulars (paragraphs 14 through 18) that Plaintiff is here alleging that the patent infringement, breach of confidence and unjust enrichment all relate to the same subject matter which means that Plaintiff is here attempting to use these patents to prevent the Defendant from purchasing equipment from Plaintiff's competitors and using the same in the combinations and methods patented by the second, third and fourth patents in suit.

"In paragraph 7 of the Complaint the following allegations of material facts appear:

"1. 'That in this industry, producers of oil such as defendant are supplied with oil well completion equipment by a number of relatively small competing manufacturers; that plaintiff is one of such manufacturers; * * *'.

"2. 'that defendant is one of the largest producers of oil in the United States and by reason of the great volume of oil well completion equipment which it purchases, the economic position of said manufacturers is greatly affected by the distribution of defendant's patronage;'.

"3. 'that it was and is the policy of the defendant to maintain more than one source of supply for said equipment, * * *'.

"4. 'that defendant distributed said standards and specifications to manufacturers in competition with plaintiff; * * *'.

"5. 'that defendant did thus induce other of said manufacturers to make equipment for defendant capable of and especially adapted for use by defendant embodying said improvements which defendant had obtained from plaintiff; * * *'.

"6. 'that plaintiff advised defendant of the injury to plaintiff which would result from such use of said standards and specifications, * * *'.

"7. 'that by reason of defendant's commanding position in this industry resulting from the great volume of oil well completion equipment which it purchases, the aforesaid conduct of defendant has caused widespread disregard in the industry for plaintiff's right in said improvements.

"In paragraph 6 of the Complaint it is alleged:

"1. 'that defendant later distributed the said standards and specifications to manufacturers in competition with plaintiff; * * *'.

"2. 'that in the subsequent use of said standards and specifications, manufacturers in competition with plaintiff were caused by defendant to supply equipment which, when assembled and operated by defendant on its wells, would embody the improvements which plaintiff had submitted. * * *'

"Mr. Mueller testified on deposition as follows (pages 133 and 134):

" 'Q. So, as I understand it, all of the claims of the patents in suit relate either to combinations of elements or to methods except claims 5 and 6 of the first patent which has to do with the casing hanger? A. I think that is correct, sir.' "

* * * * * *

" 'Q. Now your complaint in this suit is not that the Defendant Humble has used any new elements that you have developed but that Humble has purchased elements and assembled them in a way that infringes on your rights, isn't that your understanding? A. Broken it down into standard articles of commerce and reassembled it into the combination of the patent.

" 'Q. I see. In other words, Humble has purchased standard articles of commerce and assembled them in violation of your patent? A. To the best of my knowledge and belief, yes, sir.'

"7. Plaintiff and its competitors are selling equipment for use in practicing the inventions of the third and fourth patents in suit which equipment is not patented by any of the four patents in suit, because:

"(a) Plaintiff and its competitors seldom sell the complete combinations to which the claims of the third and fourth patents are limited.

"As Mr. Malley, attorney for Plaintiff, said in his affidavit in support of the original Motion by Plaintiff to compel the production of documents filed June 21, 1948, page 2:

" ' * * * the claims of the patents in suit in the main define assemblies or combinations of individual elements of equipment as they are provided at an oil field or on a well, or methods of operation which take place on a well or in a particular field; * * *'

"Mr. Mueller in his Affidavit filed on November 24, 1948, in response to Defendant's Request for Admissions (page 8) says: 'Important elements of the combinations of the patents in suit comprise control equipment including master drilling valves and blowout preventers especially adapted to perform in the combinations of the patents in suit. * * *'.

"And in the same Affidavit, page 9, Mr. Mueller also has this to say: 'As a result of the peculiar character of the inventions this expensive control equipment is often already owned by the customer, and in the greater number of instances where the combinations and methods of the patents would be used the purchase of such equipment does not arise. This expensive control equipment is therefore seldom supplied to the customer by Plaintiff * * *'.

"The sworn statements of Mr. Malley and Mr. Mueller above quoted are sufficient to show that Plaintiff and its competitors seldom sell the complete combinations to which the claims of the third and fourth patents are limited. But if the Court wishes to examine the third and fourth patents the Court will find that every one of the combination claims of both of these patents is limited to a combination including a master drilling valve, and the combination claims of the third patent are additionally limited to a combination including a blowout preventer.

"Therefore as Mr. Mueller says in his sworn statement, the master drilling valves and blowout preventers are seldom supplied, and this shows that Plaintiff and its competitors seldom sell the complete combinations to which the third and fourth patents are limited.

"(b) Equipment sold by Plaintiff and its competitors constituting less than the complete combinations is not patented by the third or fourth patents.

"Only the complete combination is patented by a combination claim.

"Mr. Mueller's deposition testimony is as follows: (P. 25)

" 'Q. You are engaged in the sale of elements that go into this assembly, are you not? A. Yes, sir.

" 'Q. And your salesmen are urging the purchase of those elements? A. Certainly. That is the way we support our efforts.'

"On Page 146–148 Mr. Mueller testified as follows:

tiff filed its Reply thereto.[2] An examination and consideration of the record and defendant's contentions convinces me that defendant is right and that the record shows

" 'Q. Mr. Mueller, with reference to this ASA Series System that you have been talking about and the combinations of the patents, your company, the Gray Tool Company, manufactures some of the elements, isn't that true, and other elements are manufactured by other companies? A. Yes, sir.'

"Mr. Mueller also testified:

" 'Q. Your company is engaged in selling the elements that you manufacture not only to the Humble, the defendant in this case, but the various other major oil companies, isn't that true? A. Yes.

" 'Q. And your competitors are likewise engaged? A. Yes, sir.'

"Examples of the unpatented equipment sold by Plaintiff for use as elements of the patented combinations of the third and fourth patents in suit are the tubing heads with locking means and tubing hangers (pages 1352 and 1353 of Gray Tool Company Catalogue No. 46 attached to Exhibit 'A' of Mr. Malley's Affidavit in Support of Plaintiff's Answer Under Rule 56(f) [Fed.Rules Civ.Proc. 28 U.S. C.A.] to Defendant's Motion for Summary Judgment). Plaintiff twice sought to obtain claims on the tubing head with locking means and tubing hanger and the same were twice rejected by the Patent Office (File wrapper patent 2,241,333. Original claims 1, 6 and 8 rejected on November 5, 1934, cancelled on May 6, 1935. Claims 31 through 35 entered on April 5, 1938, rejected on February 17, 1939, cancelled on March 1, 1939).

"(c) The first patent does not cover equipment used in practicing the inventions of the third and fourth patents.

"The claims of the first patent are all limited to a particular casing hanger (claims 5 and 6) or to assemblies including two casing heads. The combinations claimed by the third and fourth patents do not include either this casing hanger or the two casing heads.

"(d) The second patent is a method patent and therefore does not cover any equipment.

"8. Plaintiff and its competitors are selling equipment which may be used in practicing the method of the second patent, but this equipment is not patented by this second patent because a method patent does not cover any equipment.

"9. Assuming for the purposes of Defendant's Motion for a Summary Judgment that Plaintiff is selling, that one of its competitors has sold, and that Defendant has purchased from this competitor, a particular *casing* hanger assembly patented by claim 9 of the first patent in suit, that is immaterial for the following reasons:

"(a) Plaintiff is not seeking an injunction only to restrain Defendant from purchasing from Plaintiff's competitor and using the particular *casing* hanger assembly patented by claim 9 of the first patent.

"(b) On the contrary, Plaintiff is seeking an injunction which would restrain Defendant from purchasing equipment from Plaintiff's competitors and using the same in practicing the inventions of the second, third and fourt patents in suit, which equipment is not patented by the second, third and fourth patents in suit, for the reasons set forth under paragraphs 7 and 8 above.

"Conclusion.

"The foregoing material facts establish that Plaintiff is here attempting to use the second, third and fourth patents in suit to establish a monopoly on equipment not patented by any of the patents in suit. Defendant is entitled to a judgment as a matter of law."

2. Such reply is as follows:

"In accordance with permission granted by your Honor, plaintiff files this answer to a paper which had not been served on counsel for plaintiff, but which was handed to the Court by counsel for defendant at Oral Argument on April 1, 1949.

"The said paper asserts new grounds for summary judgment and is actually an attempt to amend defendant's original motion. Counsel for defendant's oral argument is primarily based on the grounds advanced in this new paper.

"The new paper attempts to remedy fatal deficiencies in defendant's original motion. The original motion did not point out any specific equipment which plaintiff sells on which the charge of misuse is based, nor did it point out which patent had been misused, or how it was misused.

"The original motion was based on the broad allegation, in counsel for defendant's own language, that 'the equipment sold by plaintiff for use in practicing the patented inventions is *admittedly* unpatented.' Plaintiff's printed 'Supplemental Memorandum in Support of Its Answer to Defendant's Motion for Summary Judgment' proved that the above quoted statement on which the original motion is based was not true. Defendant's new

paper concedes the failure of defendant's original motion by admitting that the equipment which plaintiff sells is covered by one of its patents, No. 2,082,413 (See Assumption No. 9, page 11, of the said new paper filed by defendant at the hearing).

"The new paper places the issue on a different ground, i. e., that there is misuse because, as counsel for defendant argues the equipment sold by plaintiff for practicing the inventions of the third and fourth patents is not covered by the claims of the first patent. Counsel for defendant's arguments are not supported by any positive testimony supporting these new contentions. He did not question Mr. Mueller in the deposition of the latter as to the 'patentability' or 'unpatentability' of the equipment which plaintiff sells. He did not ask Mr. Mueller any specific questions about equipment or final assemblies of equipment which plaintiff sells, but confined his examination to general questions which were not directed toward the patented nature of the equipment which plaintiff *sells*.

"These arguments based on this new paper are answered by the affidavit of Robert A. Mueller, president of plaintiff, attached hereto. Mr. Martin emphasized in his argument that Mr. Mueller is well qualified to testify on this matter.

"The affidavit of Mr. Mueller proves the new fact issue raised by the new paper presented by defendant at the hearing. That affidavit proves that the equipment which plaintiff sells for use in practicing the inventions of the third and fourth patents is covered by the claims of the first patent.

"Aside from the above, the Court will observe that defendant made no attempt to actually prove misuse by showing that plaintiff had imposed any real restraint in commerce on unpatented equipment. The most recent U. S. Supreme Court decision, Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672, February 28, 1949, held that there must be real proof that the plaintiff has actually imposed restrictions as to the purchase of unpatented equipment or material. The Supreme Court affirmed the District Court's ruling, 86 F.Supp. 191, 200, that:

"A patent owner may legitimately engage in selling unpatented material usable with the patented article or process licensed by him, but he cannot legally require the licensee to purchase such material from him as a part of the licensing arrangement. Unless it could be found that plaintiff's entire licensing conduct is merely a subterfuge, it is hard to con-

ceive what more plaintiff could have done to safeguard itself from charges of having unduly broadened its patent monopoly. The evidence does not warrant a finding that the plaintiff's licensing conduct is a subterfuge. Therefore, it is concluded that the defendants have not met the burden of proving that the patent has been misused."

"Photostatic copies of both the U. S. Supreme Court and District Court decisions in this recent Graver case are attached hereto.

"In oral argument, counsel for defendant cited additional authorities not mentioned in his original brief, including Ethyl Gasoline Corporation v. U. S., 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852; Frank Adam Elec. Co. v. Westinghouse Elect. & Mfg. Co., 8 Cir., 146 F.2d 165; Lincoln Elec. Co. v. Linde Air Products Co., 6 Cir., 171 F.2d 223. These cases are concerned with fact situations where a restraint had been actually proved, and where plaintiff was by its conduct controlling a large part of an industry.

"In addition to the fact issues raised in this new paper presented by defendant, there still remains those fact issues argued by counsel for plaintiff, including the following:

"(1) If it be assumed that plaintiff is obligated to grant licenses under its patents, did defendant by its so-called 'standardization' program and handling of industrial property rights, the fraudulent misappropriation of plaintiff's property rights in violation of trust, confidence and contract, and the selling of reports and standards incorporating same to Standard Oil Development Company, coupled with a refusal to accept an unrestricted license offered by plaintiff, interfere with the normal development of plaintiff's business under its patents and thus deny plaintiff the opportunity to develop any licensing program under the patents in suit?

"There are also the issues of validity and infringement of the patents referred to by Judge Hutcheson in Hawkinson v. Dennis, 5 Cir., 1948, 166 F.2d 61:

"' * * * Tried and determined as a whole, the questions raised upon the issue of plaintiff's unjust and unfair uses and practices in respect of the patent could then be considered in the light of the realities as to whether plaintiff has a patent and whether defendant has infringed it, and not, as was done on this record, by a kind of shadow boxing in vacuo.'"

"Plaintiff respectfully submits that under the rule, defendant's grounds for summary judgment must be stated in its

that plaintiff is, as defendant contends, attempting to establish a monopoly, etc., or has done so.

But plaintiff standing chiefly upon Hawkinson v. Dennis, supra, strenuously contends that even if this be true, the Motion for Summary Judgment should not be granted, but that the case should be fully tried on the merits. I think this Motion for Summary Judgment in this case presents only a question of law. It comes within this wording in Hawkinson v. Dennis 166 F.2d 62: "In patent infringement cases, however, the patent being a public grant made in the interest of the public, and the public interest being always present, courts have been quite liberal in allowing infringers, and even licensees, to escape being brought to book for their infringement. *If, therefore, the district judge was right in the conclusion that it was established as matter not of fact but of law, that is by undisputed evidence and the inescapable inferences to be drawn therefrom, that plaintiff had been and still was misusing its patent, the judgment ought to be affirmed, without prejudice, of course, to plaintiff's right to again sue when it can show that it has purged itself of wrongful uses and practices."*

I think the record in this case shows it to be indisputably true that plaintiff is misusing the patents in suit.

Defendant's Motion for Summary Judgment will, therefore, be granted. Let Decree be drawn and presented.

duly filed Motion, and plaintiff is only required to oppose those grounds actually alleged in the Motion; that defendant may not at the hearing set up new grounds for summary judgment. However, in view of the fact that defendant did present this new paper, and did base its argument on the subject matter of this new paper, plaintiff answers its allegations herein.

"In conclusion, it is submitted that the proceedings in this matter demonstrate in a marked degree the inherent danger in summary judgment proceedings.

"Defendant completely ignores facts incontrovertibly established by plaintiff. Defendant assumes the existence of facts denied by the plaintiff.

"The parties draw inferences from the facts which they have asserted as established, and these inferences are diametrically opposed and utterly irreconcilable.

"To grant a summary judgment, this Court would have to take upon itself to reconcile all of the conflicts and would have to resolve all disputes in favor of defendant.

"Your Honor, of course, knows that it is not the province of a trial court in summary judgment proceedings to evaluate the evidence and resolve conflicts therein. Indeed, as soon as conflict appears, it is the duty of the Court to proceed no further, and to deny a motion for summary judgment."