**ACME STEEL COMPANY, Appellant,**

v.

**The EASTERN VENETIAN BLIND COMPANY, Appellee.**

No. 7073.

United States Court of Appeals Fourth Circuit.

Argued Nov. 10, 1955.

Decided Dec. 13, 1955.

---

1. See also 15 Am.Jur., Criminal Law, Sec. 335, p. 24.

2. Hamilton v. United States, supra, 221 F. 2d at page 614.

Glen E. Smith, Chicago, Ill. (Paul C. Miller, Chicago, Ill., and John W. Avirett, 2d, Baltimore, Md., on the brief), for appellant.

John Vaughan Groner, New York City (Morton M. Robinson, Baltimore, Md., William H. Webb, Morton Burden, Jr., Pittsburgh, Pa., Ronald F. Ball, Rego Park, N. Y., Fish, Richardson & Neave, Boston, Mass., and Webb, Mackey & Burden, Pittsburgh, Pa., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Acme Steel Company (hereinafter called Acme) instituted against The Eastern Venetian Blind Company (hereinafter called Eastern) a civil action in the United States District Court for the District of Maryland. The complaint alleged infringement of Claim 1 of the Wilson patent, No. 2,294,434 (hereinafter called the '434 patent) relating to a method of forming Venetian blind slats. In a former civil action between these same parties, this claim, and other claims of the '434 patent were held valid and infringed by Eastern, both by the District Court, 93 F.Supp. 233, and by us. 188 F.2d 247.

Sometime after the entry of the original judgment by the District Court, and while the appeal to this Court was pending, Eastern adopted and put into commercial use a modified form of apparatus for forming metal Venetian blind slats which was disclosed to representatives of Acme shortly after the decision of this Court was handed down on April 5, 1951, and was subsequently exhibited to them in operation in Eastern's plant on March 18, 1952. It is this modified method that is now before us.

The District Court held in the instant case that Claim 1 of the '434 patent was not infringed by Eastern in the modified method, 130 F.Supp. 459, and Acme has duly appealed to us. Since we think the decree of the District Court was correct, this decree must be affirmed.

The conclusion of the District Court is thus summarized in the opinion below, 130 F.Supp. 459, 465:

"After a careful review of the entire testimony, much of which is highly technical and full of conflict, we reach the conclusion that the weight of the credible testimony does support Eastern's contention that the basic concept in design and operation of the Eastern machine are different from the Wilson patent concept and design * * *."

Claim 1 of the Wilson '434 patent reads:

"1. The method of forming a longitudinally straight metal strip of non-planar cross section, which comprises the operations of stretching longitudinally the metal of an elongated substantially flat strip between its edges by subjecting the strip between its edges to longitudinal tension of such magnitude that if the tension were released all parts of the metal between said edges would be under compression, and then bending the strip transversely and effecting a stretching of the edge portions of the strip until all portions of the strip have been stretched longitudinally to substantially the same extent."

It is quite clear from this claim—it is admitted also by Acme—that the '434 patent contemplates a two-stage process, which is the very essence of the patent. This was definitely indicated in the opinion below, 130 F.Supp. 459, 461:

"Summarized in simple language, the first stage of the method of claim 1 consists of stretching longitudinally the center portion of the strip, whereby a so-called buckling or waving in this central portion is created; and in the second stage, the metal strip is run through another ma-

chine where it is bent transversely, that is, it is given a concave shape, and its *edge* portions are *stretched* until *all* portions of it have been elongated to substantially the same extent, and the buckling or waving created in its center portion by the first stage operation is ironed out."

Indeed, in the original case before us, it was brought out that Acme sometimes performed only the first stage of the operation, sold the slats in that condition, and left the less difficult second-stage operation to be carried out entirely by the buyer. The two stages of the Acme operation are carried out on different machines. The Eastern process is entirely carried out on a single machine.

According to the opinion below, 130 F.Supp. 459, 462–463, 465–466:

"In the Eastern process the flat, unformed strip is fed into the machine from a coil on the left. As the strip passes between two feed rolls and then into the first, or entry shoe, it is bent transversely, and the bending increases progressively as the strip continues through this shoe. Then, as the strip passes on through the second, or exit shoe, the curvature of the strip progressively decreases. The shoes serve to support and restrain the strip so that it will respond to the transverse bending imparted to it by the co-action of the rotating forming roll and the shoes. The edges of the strip are in contact with the sides of the troughs in the shoes throughout their entire length. The central portion of the strip is not in contact with the concave contour of the bottoms of these troughs, it being slightly above the deepest points in the trough. * * * These two pairs of rolls [the entrance and exit guide rolls] do not perform any of the forming operation.

* * * * * *

"* * * Eastern provides the means whereby the length of the path of both the edges and the center of the strip will be maintained the same during the forming operation, which is a single, continuous, indivisible operation; and * * * any adjustments of the feed rolls or guide rolls on the Eastern machine after its original setting for operation are minor and are not made for the purpose of creating stretching tension in any particular part of the strip, but merely to overcome any variance in the gauge or stiffness of the strip from its gauge or stiffness existing at the time of the original setting of the machine, prior to commencing the operation."

■ These holdings of the District Court, though there was some conflict in the testimony, find ample support in the record. We must, therefore, uphold these views.

The '434 patent, on the other hand, to quote again the opinion below, 130 F. Supp. 459, 462:

"* * * calls for the use of two machines in a two-stage process. In the first stage machine the flat, unformed strip is fed into the apparatus from a coil. This machine is about 50 or 60 feet long and the strip passes, from left to right, through a series of driven friction rolls which are of relatively large diameter; then through a series of cylindrical rolls of relatively small diameter, and then over a crowned roll which causes the center of the strip to pass through a longer path than the edges, thus stretching the center. From the crowned roll the strip is passed over another series of rolls like the initial set of rolls, and is finally passed on to a winding coil. The strip is then fed from a coil into another machine, approximately six feet long, for the second stage operation, and passes, from left to right, through a pair of concave-convex rolls which transversely form the strip and at the same time stretch its edges to an extent equal to the stretch imparted to its center

portion in the first stage operation. The strip is then passed on to a winding roll. This second stage operation is usually performed at another time and place."

Again, the District Judge found, 130 F.Supp. 459, 470–471:

> " * * * Wilson was not seeking a one-stage process. On the contrary, he considered his two-stage process essential to a really satisfactory product,—so much so that there is nothing in the specifications or claims of his patent which teach achieving the same objective, namely, the forming of satisfactory Venetian blind slats in a single stage process."

We summarize briefly. The essential teaching of the '434 patent repeatedly refers to the "two stages" and states that, in the first stage, the metal is "stretched" or elongated between its edges on one machine, leaving the edges substantially unstretched, while in the "second stage", on another machine, the metal is bent transversely and the edges "are stretched" or elongated. On the other hand, the Eastern process involves a single, indivisible, one-stage operation on one machine, with no change by stretching or shortening, of any transverse portion of the metal strip, with respect to any other portion. On the Eastern machine, the two shoes, the entry shoe and the exit shoe, are quite vital. There are no such shoes in the '434 patent.

A view of the Eastern machine in operation at the Eastern plant was obtained by certain representatives of Acme. Acme strongly insists that these machines were quite different from the Eastern machine exhibited in the District Court and also shown to us. Acme vigorously contends that these machines disclosed, though carried out on a single machine, the two-stage process taught in the '434 patent.

Eastern, on the other hand, argues that the Eastern machines at its plant were, in all essential respects, quite similar to the Eastern machine exhibited to the District Court and to us. This contention of Eastern was amply supported by substantial evidence in the record.

Thus was involved a pure question of the credibility of witnesses. The District Court seems not to have definitely held in precise terms that the machines seen in operation at Eastern's plant and the machine exhibited were substantially identical. However, the District Judge did hold many times by clear implication that there was such substantial identity. The whole tenor of the opinion so indicates. Indeed, without such a holding, the opinion below could not have been written.

On the oral argument before us, counsel for Acme practically admitted that if the machines in operation at Eastern's plant corresponded to the machine exhibited in court, there was no infringement of the '434 patent by Eastern. This admission, in the light of what we have written, we regard as highly important in the disposition of this case.

The District Court stated, 130 F.Supp. 459, 470:

> "Even though not to be classified as a pioneer process, the Wilson patent two-step process is undoubtedly entitled to liberality of interpretation. But we are satisfied that such liberality as can properly be given to the doctrine of equivalents, as set forth in the authorities which we have just analyzed, does not justify our holding that Eastern's process is nothing more than an equivalent of the Wilson patent process."

With this we concur.

Acme has relied heavily on the testimony of Wilson. Eastern stresses the evidence of Nieman, Sachs and Maish; also the results of the "etch tests." Evidently the District Judge was deeply impressed by Eastern's testimony and resolved the more important conflicts in favor of Eastern.

The judgment of the District Court is affirmed.

Affirmed.