**UNITED STATES PIPE AND FOUNDRY COMPANY, Appellee,**

v.

**WOODWARD IRON COMPANY, Appellant.**

No. 8932.

United States Court of Appeals Fourth Circuit.

Reargued Sept. 27, 1963.

Decided Jan. 9, 1964.

John Gibson Semmes, Washington, D. C. (Semmes & Semmes, Washington, D. C., and Edmunds, Baldwin & Graves, Lynchburg, Va., on brief), for appellant.

Hugh P. Carter, Birmingham, Ala. (Woods, Rogers, Muse & Walker, Frank W. Rogers, Sr., Roanoke, Va.; Jennings, Carter & Thompson, and Peyton N. Finch, Jr., and Paul J. Ausbeck, Birmingham, Ala., on brief), for appellee.

Before BRYAN and BELL, Circuit Judges, and WINTER, District Judge.

ALBERT V. BRYAN, Circuit Judge.

That Patent No. 2,953,398, now owned by United States Pipe and Foundry Company and covering a high-pressure pipe joint, is valid and infringed by the product of Woodward Iron Company was the holding of the District Court. We would affirm these conclusions finally if we were persuaded that U. S. Pipe's assignors were the first inventors, but the findings of the District Court are not clear on that point. Our affirmance on all other phases of the case results from the failure at trial of the appealing defendant to refute the facts establishing and maintaining the presumption in law of the validity of the patent. Cf. Uni-

versal Incorporated v. Kay Manufacturing Corp., 301 F.2d 140, 148 (4 Cir. 1962). Imitation by Woodward of the U. S. Pipe article was amply proved.

Known as a push-on, the joint is intended chiefly for connecting metal, concrete, and other kinds of pipe sections for water, gas and similar mains. U. S. Pipe's product is called Tyton, and Woodward's the ledgeless Bell-Tite. Patent for the Tyton was issued September 20, 1960 upon the application filed May 28, 1956, of Lawrence T. Haugen and Carl A. Henrikson, the assignors of U. S. Pipe. It contains 8 claims, of which Nos. 3 and 6 are not in suit. As No. 5 is the broadest, accordance of validity to it would also constitute approval of the other claims. Findings in detail were made by a special master and these were adopted by the District Court. The question of compensatory damages was left for later decision, but attorneys' fees and increased damages were immediately denied.

After the initial argument of this appeal, it appeared to us that possibly the parties here might be bound by the final decision in the Fifth Circuit case of United States Pipe & Foundry Co. v. James B. Clow & Sons, Inc., 205 F.Supp. 140 (1962), aff'd in part and reversed in part, 313 F.2d 46 (5 Cir. 1963), inasmuch as the same issues were pending there between U. S. Pipe and James B. Clow & Sons, Inc., the licensor of Woodward. Our question was whether such a privity might exist between the licensor and licensee as would render a decision in the Fifth Circuit binding upon U. S. Pipe and Woodward here. In this thought, we suggested a stay of the present action. As the point had not been briefed or argued before us, we reset the appeal for hearing on this issue. United States Pipe & Foundry Company v. Woodward Iron Co., 4 Cir., 321 F.2d 98 (1963). Both parties answered our query in the negative. In view of the arguments we are not wholly persuaded that a sufficient privity existed between Woodward and its licensor to sustain the proposition we posed, and so we undertake to determine the appeal on its merits.

In unskilled language, the joints in dispute are formed by telescoping an inner pipe into the bell-shaped end of an outer pipe which has an interior circumference just large enough to receive the inner pipe, sometimes known as the spigot, in a snug fit. Immediately inside the bell opening of the outer pipe is a groove for the full circumference of the pipe, the first wall of which is formed by the lip of the bell, and the second wall an inch or two beyond consists of a projection from the barrel of the bell inwardly and perpendicular to the inner pipe. In the ledge type of joint, behind the second wall is a ledge, which is merely a solid continuation of the metal of the second wall, tapering almost horizontally in its outer side, as part of the arc of the bell, down to the remainder of the pipe. In the ledgeless type, there is no second wall and a space is left where otherwise the ledge would occur.

Within the groove just described is placed a rubber gasket. It is held in position not only by the barrel of the bell and the two walls already mentioned, but also by a metal protrusion from the barrel of the bell which fits into a corresponding crevice in the gasket. As the inner pipe is forced into the bell the gasket is compressed between the two pipes, thus elongating it and sealing the joint.

Expertly, the U. S. Pipe's joint is described in the following quotation from Claim 5 of the patent:

"5. A pipe joint comprising, in combination an inner pipe section having an end portion of generally cylindrical outer circumference, an outer pipe section having a generally cylindrical inner circumference defining an opening receiving said end portion of said inner pipe section, said outer pipe section having an axially elongated annular groove in its inner wall radially opposite said inner pipe section, said groove being defined on its axial end adjacent the said opening by the inter-

nal wall of a lip extending toward the said inner pipe section and being further defined by a substantially axially extending wall portion and on its axial end remote from said opening by a second wall extending toward said inner pipe section, the diameter of the said lip at its inner extremity being slightly greater than the external diameter of said inner pipe section, an annular space on the axial side of said groove remote from said lip into which said inner pipe section projects, said space having a portion with a diameter less than the diameter of the said axially extending wall portion of the groove, an axially elongated annular gasket having two axial parts both of which are fitted in said groove, a first axial part of said gasket having at least a portion thereof in engagement with the axially extending wall of said groove and the outer wall of said inner pipe section under radial compressive force whereby a seal is effected between said outer and said inner pipe sections, the other axial part of said gasket being positioned axially adjacent said opening and having an inside diameter tapering inwardly from a maximum greater than the outside diameter of said inner pipe section, and means cooperating between said other axial part and an adjacent wall of said groove for securing said gasket against axial movement of translation relative to said groove during assembly of said joint."

The Bell-Tite joint was developed by Ralph W. Kurtz under the direction of Clow during a two-month study beginning in December, 1956, when he was familiar with U. S. Pipe's Tyton joint. The first joint developed by Clow as a result of this study was ledgeless. However, when the ledgeless Bell-Tite joint failed an offset test, due to a later-discovered faulty gasket, a ledge was added in an effort to solve the problem. Woodward manufactured the ledge Bell-Tite from April, 1957, to December, 1960, but shifted to production of the ledgeless Bell-Tite in November, 1960. Both the ledge and ledgeless Bell-Tite were manufactured by Woodward under a license from Clow, assignee of Ralph W. Kurtz's patent No. 2,898,131, issued August 4, 1959 on application filed February 4, 1958. Woodward confesses that its *ledge* Bell-Tite infringed Tyton.

Validity of U. S. Pipe's patent was attacked by Woodward on assertions that: (1) the design was one of simple obviousness, (2) it was vitiated by improper introduction of new matter in the patent application subsequently to the original filing, and (3) the patentees were not the first inventors.

Infringement was denied by Woodward on the grounds that its ledgeless Bell-Tite joint did not contain all of the elements of the Tyton, a combination patent. Sargent v. Hall Safe & Lock Co., 114 U.S. 63, 5 S.Ct. 1021, 29 L.Ed. 67 (1885); Entron of Maryland, Inc. v. Jerrold Electronics Corp., 295 F.2d 670, 677 (4 Cir. 1961); Sears, Roebuck & Co. v. Minnesota Mining & Manuf. Co., 243 F.2d 136 (4 Cir. 1957), rehearing denied per curiam, 249 F.2d 66, cert. denied, 355 U.S. 932, 78 S.Ct. 413, 2 L.Ed. 2d 415 (1958). Woodward points particularly to the absence in Bell-Tite of the second wall and the ledge. A space in the Bell-Tite exists where these two features are found in the Tyton.

■ I. We start with the statutory presumption of validity:

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it." 35 U.S.C. § 282.

This presumption is underbraced presently by the extended scrutiny of the patent by the Patent Office. E. g., S. H. Kress & Co. v. Aghnides, 246 F.2d 718, 721 (4 Cir.), cert. denied, 355 U.S. 889, 78 S.Ct. 261, 2 L.Ed.2d 189 (1957). The Examiner rejected all of U. S. Pipe's claims in the original application; the Board of Appeals finally granted the instant patent on amended claims.

Appellant Woodward vigorously assails the Tyton joint on the score of obviousness, commencing with the statute, 35 U.S.C. § 103:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the matter in which the invention was made."

Applying this section, Woodward first adverts to a sketch made by William Bevington in August, 1954, antedating by several years the submission of Tyton for patent.

The drawing undoubtedly revealed a construction and operation strikingly similar to Tyton. Bevington, at the time, was a draftsman in the shop and plant of James B. Clow & Son and became familiar in his work with joints then current. After an industry meeting for discussion of joints used with non-metal pipe, his superior suggested that Bevington seek the development of a better joint for cast iron. In no more than a day or two Bevington produced his sketch.

Despite Bevington's suggestion Clow, Woodward's licensor, pursued it no further. Never was it reduced to practice before the Tyton application in the spring of 1956. A fair inference is that neither Bevington nor his employer saw or grasped any practicability or utility in the drawing. Entron of Maryland, Inc. v. Jerrold Electronics, Inc., supra, 295 F.2d 670, 675. While this omission does not entirely destroy the diagram as some evidence of obviousness, it certainly weakens it as an underprop for Woodward's contention.

We see, too, that other patents, as far back as 1923, have in certain particulars utilized the principle of the Tyton joint. While none of these is relied upon by way of anticipation—indeed anticipation is expressly renounced by Woodward as a defense in this case—we have nevertheless looked at them in our inquiry for obviousness. They, too, are not sufficiently convincing on this point.

██ Commercial success of a product may be included in a consideration of obviousness and in vindication of a finding of patentability. Entron of Maryland, Inc. v. Jerrold Electronics Corp., supra, 295 F.2d 670. It is recognized that even widespread or lucrative success does not in itself establish patentability of the article. But here the circumstances reveal that the success of Tyton is quite persuasive in the argument for invention. Universal Incorporated v. Kay Manufacturing Corp., supra, 301 F.2d 140, 148.

The evidence shows that the industry for many years acutely needed, and had searched for, a push-on joint having at least these characteristics: tightness against internal and external pressure, anchorage of sealing means against extrusion or displacement in the process of connecting the pipes, flexibility permitting deflection at the pipe connections, an underground durability approaching that of the pipe, ready assembly with simple tools and unskilled labor, economy in manufacture, and adaptability to the variations in standard pipe sizes. This exploration U. S. Pipe commenced with intensity in 1952 under the leadership of Haugen, its chief engineer, and his associate Henrikson. Not until February 1956 did they in part achieve their objective, a joint now represented by the Tyton. First utilized in April, it was offered for sale in November 1956. Meanwhile, on May 28, 1956 as noted, U. S. Pipe applied for a patent on Tyton.

Acceptance by the trade was immediate and most impressive. In 1957 it accounted for approximately 33⅓% of the cast iron pressure pipe shipments of U. S. Pipe, a nationally prominent manufacturer, and during the first four months of 1961 for over 71%, while at the same

time consignments of other type joints decreased substantially. Patent applications on the Haugen and Henrikson joint have been filed throughout the world and almost 30 had been issued at the time of this suit. License agreements likewise have been made by many domestic and foreign manufacturers, with royalties amounting to some $415,000.00 in 1961 for the first three quarters. Woodward, also a widely known maker of pipe, has enjoyed comparable prosperity in its production of the ledgeless Bell-Tite joint.

Tyton, in short, seems to have been in large measure the fulfillment of many years demand for a joint, economical both in manufacture and in installation, as well as one satisfactorily operable. Although hunt for such a device was constant, not until its disclosure in 1956 was a joint structured like Tyton. If its design was obvious, strange indeed, it was not produced and employed previously. "It is of great significance that the patentees succeeded" as Judge Soboleff said in Entron of Maryland, Inc. v. Jerrold Electronics Corp., supra, 295 F.2d 670, 675, where others in the search had failed.

■ Attack is also mounted by Woodward on the ground of improper amendment of the Tyton application on April 1, 1957—slightly more than a year after the original filing. It incorporated into the specifications a rubber gasket of uniform hardness or deformability. The first application had specified a gasket of dual deformability. The part of the gasket—the holding part—axially nearer the entrance to the bell, was of less resiliency than the portion of the gasket further from the bell aperture. This change was offered by way of a continuation-in-part patent application. With the Patent Office and the District Court we share the view that this was not new matter. It was but an embellishment of the description of a feature inherent in an element already specified in the original application.

■ U. S. Pipe was not the first inventor, Woodward further charges, because one Mathieu had conceived, and filed in the United States Patent Office an application to patent, a pipe joint of the same pattern as the Tyton prior to U. S. Pipe's application. Mathieu had filed applications in Brazil in July and September 1955. See 35 U.S.C. § 119. With these three applications before it, the Patent Office in 1960 declared an interference and scheduled a hearing upon it. Meanwhile, an agreement was reached between U. S. Pipe and Mathieu's assignee, whereby a disclaimer was entered on Mathieu's United States application and the interference dissolved. In the absence of fraud, the disclaimer had the effect of an award of priority of invention to U. S. Pipe as against Mathieu, though, of course, this issue was not foreclosed as to third parties. Application of Shokal, 242 F.2d 771, 773, 44 CCPA 854 (1957). No further prosecution anywhere of the Mathieu applications appears in this record.

■ Fraud is laid to U. S. Pipe by Woodward on the premise that the disclaimer agreement was made to conceal the true inventor. But no fraud was found by the District Court and we see no reason to disturb that ascertainment. Woodward was obligated to prove the accusation; we are not satisfied it did so.

■ In effect the special master found that Haugen and Henrikson, U. S. Pipe's assignors, were the first inventors as measured by 35 U.S.C. § 102. It is not clear from his report whether his decision rested on § 102(f) or § 102(g). If both Mathieu and Haugen-Henrikson invented their respective joints as demanded by § 102(f), ascertainment of the first inventor would seem to depend upon a determination of priority under § 102(g). Furthermore, in the master's discussion, there is some indication that his conclusion was based upon the view that Mathieu's or his assignee's disclaimer or abandonment prevented consideration of Mathieu as the first inventor in the effort to invalidate the Haugen-Henrikson patent. Woodward, therefore, assails the master's finding—adopted by the District

Court—on the ground that it was premised on an unsound principle. The Woodward point is that disclaimer or abandonment by Mathieu does not erase his applications, in Brazil and the United States, as evidence to prove Haugen-Henrikson were not the first inventors. In this Woodward correctly observes that the public interest is at stake in every patent, Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 815–816, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); Mercoid v. Mid-Continent Inv. Co., 320 U.S. 661, 665, 64 S.Ct. 268, 88 L.Ed. 376 (1944), and no private agreement or other act can create as the first inventor one who in truth was not so. Sinko Tool & Manufacturing Co. v. Automatic Devices Corp., 136 F.2d 186 (2 Cir. 1943).

In the circumstances we think the issue should be remanded to the District Court for a more explicit finding. This may require the production of the United States application of Mathieu, and if so, the Court has the power to compel such production. United States Pipe & Foundry Co. v. James B. Clow & Sons, Inc., supra, 313 F.2d 46. If the finding can be made from the present record, there will be no occasion for taking further evidence.

The patent now in review embraces, it is true, a combination of elements familiar to the trade for many years. Nevertheless, findings made by the District Court, which cannot be discounted as "clearly erroneous", show that this assembly certainly added, as already outlined, "to the sum of useful knowledge" on the subject. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Williams Mfg. Company v. United Shoe Machinery Corp., 316 U.S. 364, 62 S.Ct. 1179, 86 L.Ed. 1537 (1942); Heyl & Patterson, Inc. v. McDowell Co., 317 F.2d 719, 722 (4 Cir. 1963). Immediate precedent for this conclusion is United States Pipe & Foundry Co. v. James B. Clow & Sons, Inc., supra, 313 F.2d 46, upholding the inventiveness of the same patent.

■ In sum, subject to establishment that Haugen and Henrikson were the first inventors, we hold that patentability as a matter of law has been established for the U. S. Pipe patent by the facts, which are those we have herein recounted, found by the District Court. At all events, on poise, we cannot say that Woodward has carried the burden of overturning the statutory presumption in favor of the United States Pipe patent unless Woodward satisfactorily proves Haugen-Henrikson were not the first inventors.

II. Infringement was declared by the District Court, and subject to decision of the issue of first inventor, we have no cause to reject that conclusion. To us the similitude in constituent elements, operation, and result of Bell-Tite to Tyton is evident; certainly the finding is not clearly erroneous. Fed.R.Civ.P. 52(a); Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721 (1944); Acme Steel Co. v. Eastern Venetian Blind Co., 227 F.2d 914 (4 Cir. 1955).

Damages, as noted, have been left by the District Court for future determination. Claims Nos. 1, 2, 4, 5, 7 and 8 of patent No. 2,953,398 issued to United States Pipe and Foundry Company have been adjudged valid. Injunction against future infringement has been ordered. Each of these decisions we affirm subject to resolution of first inventorship.

The judgment of the District Court will be vacated and the case remanded to the District Court for a determination of the question of whether Haugen and Henrikson were the first inventors. If they are found to be the first inventors, the original judgment of the District Court should be re-entered; if they are not so found, the complaint should be dismissed.

Costs on this appeal will be equally divided between the two parties.

Vacated and remanded for further findings.