**PAVEMENT SALVAGE COMPANY, Inc., Plaintiff,**

v.

**ANDERSON'S—BLACK ROCK, INC., Defendant.**

**Civ. A. No. 2927.**

United States District Court
S. D. West Virginia,
Charleston Division.
March 23, 1967.

---

Edward W. Eardley, Steptoe & Johnson, Charleston, W. Va., and Walter J. Blenko, Jr., Blenko, Leonard & Buell, Pittsburgh, Pa., for plaintiff.

Frank L. Taylor, Jr., Kay, Casto & Chaney, Charleston, W. Va., and Alan W. Borst, Leek & Borst, New York City, for defendant.

## OPINION

FIELD, Chief Judge.

Pavement Salvage Company, Incorporated (hereinafter called Pavement Salvage) brought this action for patent infringement against Anderson's-Black Rock, Incorporated (hereinafter called Andersons). The patent in suit is United States Patent No. 3,055,280 for "Means for Treating Bituminous Pavement" (hereinafter called the Neville patent) and was issued on September 25, 1962. Application for the patent was filed February 20, 1959, by Charle A. Neville. The patent was assigned by Neville to Pavement Salvage.

Paving materials for highways consist of two "classes" of concrete—Portland cement concrete and bituminous concrete, the latter being the class in which we are interested. Bituminous concrete is formed by heating an asphaltic material to a sufficient temperature to make it readily workable and then mixing it with a heated aggregate (sand or gravel).

The problem of keeping transportation moving and the width of the modern highways makes it desirable to pave the roadway in two or more strips. It is here that the problem is created. The bituminous mixture used must be poured at a temperature of 250° to 290° Fahrenheit in order that it be pliable and capable of being shaped. As is frequently the case, the first strip of asphalt has cooled substantially by the time the adjoining strip is to be laid, creating what is known as a "cold joint." This so-called cold joint results in a poor bonding between the strips, allowing dirt and water to enter between them, ultimately leading to deterioration of the roadway. This deterioration brought about by the cold joint has long been a problem in the field of highway paving.

In an effort to eliminate the cold joint, three procedures have been attempted. One approach was the use of a direct flame on the asphalt in an attempt to soften it sufficiently to produce a homogeneous fusion with the strip being laid. This, however, frequently caused the asphalt to carbonize, resulting in poor bonding of the two strips.

Another theory has been to cut back several inches from the edge of the previously laid strip and paint the strip with hot asphalt. This has proved more successful than the use of the direct flame but ordinarily the cold joint is still present.

The third method is that of using radiant heat rather than direct heat. This procedure was used as early as 1905 in patching asphalt, and is the method which is most widely utilized by the paving industry today.

The Neville patent description claims a combination of apparatus for delivering penetrative radiant energy to the exposed edge of the primary lane of pavement, placing bituminous material against that lane, and then shaping the newly placed material to desired contour and surface. The apparatus or machine which performs these functions is the invention which is involved in the present controversy.

The Neville patent has nine claims, eight of which Andersons have allegedly

infringed. The claim which is best illustrative of the patent is claim 4, which states:

"4. Bituminous material paving apparatus comprising penetrative radiant energy generating means, bituminous material placing means, and pavement shaping means, said generating means being supported at a distance from the pavement and being movable along the surface whereby exposure of the pavement to generated energy is limited and scorching of the pavement avoided, said generating means comprising an enclosed chamber having a perforate member forming a lower surface of said generating means, and means to supply fuel to said generating means and pass it outwardly through said perforate member while combusting the fuel adjacent said perforate member thereby heating said perforate member to a high temperature whereby penetrative radiant energy is generated and directed against a portion of previously placed bituminous material said bituminous material placing means being disposed to place additional bituminous material adjacent the section exposed to said penetrative radiant energy, said pavement shaping means being disposed to shape the newly placed bituminous material to a desired contour and finish."

The other alleged infringed claims are merely descriptive of the various aspects of the invention.

The patent then merely claims a paving apparatus comprised of: (1) a penetrative radiant energy generating means, (2) a bituminous material placing means and (3) a means for shaping pavement. Prior art indicates that these individual means were known and used for a long period by persons familiar with the art of highway paving prior to the advent of the Neville invention.

In considering the prior art in chronological order, the first relevant patent is United States Patent No. 799,014 (referred to hereafter as the Morcom patent) which was issued in 1905. This patent teaches the repair of asphalt pavement by the use of radiant heat. In describing his invention Morcom stated:

"In my improved construction the heat is conveyed by radiation from the bottom of the combustion-chamber, which is maintained in suitable proximity to the pavement, whereby the heat is effectually applied. * * *

" * * * This heat prepares the said portion of the pavement to receive the new material and unite therewith, as heretofore explained."

Here then was an apparatus patented in 1905 which used radiant heat for the purpose of repairing asphalt. Pavement Salvage contends that this does not apply to the Neville patent because the Morcom invention was for "patching" only, whereas the Neville machine provides for the continuous paving along a strip to prevent a cold joint. Concededly, the Morcom patent teaches only the process of radiant heat and does not go into the process of spreading and shaping the bituminous concrete.

In 1915 United States Patent No. 1,136,294 was issued to Charles Switzer. This patent pertained to an invention for heating asphalt pavement. The object thereof was to soften the surface by radiant heat, so that a weighted roller, when run over the pavement, would smooth or shape it. In this patent the radiant heating mechanism and the roller were combined in one frame. Again it should be pointed out that this provided no means for the simultaneous dispersion of the asphaltic material.

United States Patent No. 2,053,709 was issued in 1936 and pertained to a "road reconditioning method and machine." The inventor, B. H. Flynn, stated that:

"The invention relates to the conditioning of gravel roads, asphalt roads, * * * after the surfaces thereof have become so rough and/or undulatory that even the most careful resurfacing in the customary ways will not restore them to the smoothness required. * * * It is the object of

my invention, however, to provide for effectively reconditioning the surfaces of the roads * * * without disturbing anything but the surface material, and moreover to provide for reuse of the material."

Flynn's patent goes on to say that the roadway is heated to between 125° and 150° Fahrenheit and the heated surface is then hewed away. The material which is hewed away is spread upon the subsurface and "then sprayed with cutback asphalt or other suitable binder * * * providing a new surface." This invention combines the heating of the road surface to make it workable and, to a degree, the application of a new surface, by the use of a binding material sprayed from the machine together with fragments of the old road surface. No specific means for heating the road was mentioned nor did it provide any method to shape and smooth the new road surface.

I. M. Wells was granted Letters Patent No. 2,254,463 in 1941 pertaining to a means for constructing and reconstructing road surfaces. This machine consists of a heater to soften the road surface, an apparatus for dispensing aggregate with the semi-liquid surface and a roller for imbedding the aggregate into the surface. The roller would also serve to shape the asphalt. The method of heating is stated thusly:

"* * * The flames from the burners are indicated as directed down onto the road surface for converting the top material of the road into a semi-fluid mass. However, the heating of the road is not limited to this specific method of heating or to the specific structure shown."

The patent granted J. L. Fizzell in 1955, Patent No. 2,705,906, performs much the same function as the Flynn and Wells patents. The patent describes an "asphalt road heater planer." The functions performed consist of heating the road surface and planing a portion therefrom in order to level and smooth it.

There is no need to discuss Patent No. 2,775,294 issued in 1956 to G. Schwank which discloses a radiation burner, since the burner itself is not covered by the Neville patent except as one of the elements of the combination.

The Neville patent is, as stated before, a combination patent combining the elements of a screed, a spreader, a leveler and a radiation burner. The patent as issued calls for a combination of these elements on one chassis.

The present controversy resulted from the action of Andersons in placing a radiation heater on the front of a Blaw-Knox paver, thus allowing the defendant's machine to perform the same functions with the same basic elements as those described in plaintiff's patent. Pavement Salvage claims that its patent has been infringed whereas defendant, Andersons, in its answer challenges the validity of plaintiff's patent and denies infringement. The two issues, of course, are: (1) is plaintiff's patent valid, and (2) if so, has defendant been guilty of infringement.

In regard to the issue of validity, it is conceded by plaintiff that its invention is merely a combination of elements. Plaintiff further conceded that each of the elements was known to the prior art. However, plaintiff contends that the combination of these elements presents a new and useful result amounting to inventiveness, and further, no single item of the prior art discloses the claimed combination. 35 U.S.C.A. § 103 states that:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by

the manner in which the invention was made."

The validity of plaintiff's patent is therefore dependent upon this section of the Code and the case law evolving therefrom. Title 35 U.S.C.A. Section 282 provides that a patent shall be presumed valid and casts the burden of establishing invalidity upon the party asserting it. In commenting on this statutory burden in Universal Incorporated v. Kay Manufacturing Corp., 301 F.2d 140 (4th Cir. 1962) the Court stated:

"The plaintiff is also entitled to the benefits of the statute, 35 USCA § 282. * * * We do not think as the plaintiff contends that an infringer must prove invalidity beyond a reasonable doubt. The cases on which the plaintiff relies for this rule, * * * were cases in which priority of discovery of the same invention was the issue rather than invalidity by reason of relevant disclosures of the prior art."

See also Keiser v. High Point Hardware, 311 F.2d 850 (4th Cir. 1962) and United States Pipe and Foundry Co. v. Woodward Iron Co., 327 F.2d 242 (4th Cir. 1964).

In the present case the defendant, then, must prove that plaintiff's invention was unpatentable, and this must be done by showing that the invention was obvious in the prior art, and that the combination in its patent has created no additional or different function nor produced any unusual or unique results.

In Graham v. John Deere Co., 383 U. S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Court referred to the statutory test of obviousness as set forth in 35 U.S.C.A. § 103, and went on to state with respect to the 1952 Patent Act:

"The Act sets out the conditions of patentability in three sections. An analysis of the structure of these three sections indicates that patentability is dependent upon three explicit conditions: novelty and utility as articulated and defined in § 101 and § 102, and nonobviousness, the new statutory formulation, as set out in § 103. * * * "

As was stated earlier, plaintiff has combined four elements which were known in the prior art. Three of the elements, the screed, leveler and spreader, when constructed on one chassis would not be a patentable invention. However, plaintiff added to this combination the element of a radiant burner. The burner, by itself, is also not patentable. Therefore, the question here is whether the addition of the burner to the paving machine which contains the other three elements has overcome the obviousness of the total combination.

The plaintiff bases its argument of unobviousness on the following points: The testimony of plaintiff's witnesses Witkoski and Crowley, who stated that during the critical period they were doubtful whether plaintiff's invention would be successful. These witnesses, however, were basing their opinion on the fact that they were doubtful that radiant heat would solve the problem of cold joints. I am of the opinion that this does not get to the heart of validity. Plaintiff's patent is a combination patent. The question of radiant heat was old in the art. The pivotal question would more logically appear to be, assuming that the radiant heat would work effectively, was it obvious that a more successful machine would evolve if all of the elements were constructed on one chassis? It is my opinion that such a combination was reasonably obvious to one possessing ordinary skill in the art.

Plaintiff relies on Blaw-Knox v. I. D. Lain Company, 230 F.2d 373 (7th Cir. 1956) in which the patent was one for paving heavy concrete highways. There the patent solved problems which had been prevalent for years, and persons skilled in the art had attempted to utilize various combinations and suggestions to solve the problem. However, that is not the situation in the present case. In asphalt paving the only real problem has been the cold joint, and the

prior art shows that radiant heat is the most successful answer to the problem.

In Great Atlantic & Pacific Tea Co. v. Supermarket Corporation, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950) the Court made the following statements:

"It is agreed that the key to patentability of a mechanical device that brings old factors into cooperation is presence or lack of invention.

\* \* \* \* \* \*

"The negative rule accrued from many litigations was condensed about as precisely as the subject permits in Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008: 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.' "

\* \* \* \* \* \*

"The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics."

The Court then makes this meaningful observation:

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements."

Plaintiff contends that its combination of elements has solved the age-old problems of asphalt paving; that the invention has, by its combination, produced a new result which has advanced the art, and further points to its commercial success and the fact that it has answered a long-felt want.

Entron of Maryland v. Jerrold, 295 F. 2d 670 (4th Cir. 1961), set forth the standard for determining whether the elements of a combination exhibit a new result in the following language:

"The inquiry should more appropriately be directed to whether the elements of the combination perform or produce a new, different or additional function or operation \* \* \* in the combination than that theretofore performed or produced by them."

It is my opinion that plaintiff's combination in no way exceeds the sum of its parts. Each element of the combination performs in the same manner and performs the same job that it formerly did when not in combination. All that plaintiff has done is to construct four elements known in the prior art on one chassis. In regard to plaintiff's contention of commercial success, see Great Atlantic & Pacific Tea Co. v. Supermarket Corp., *supra*, 340 U.S. at 153, 71 S. Ct. at 130, wherein the Court stated:

"The Court of Appeals and the respondent both lean heavily on evidence that this device filled a long-felt want and has enjoyed commercial success. But commercial success without invention will not make patentability. \* \* \* "

Based upon the foregoing, it is my opinion that the Neville patent is not a valid patent, and hence I find no need to rule on the question of infringement. Counsel may prepare an appropriate order incorporating this opinion by reference therein.